[No. 9938. In Bank. — July 30, 1886.]

## A. L. BATH, APPELLANT, *v.* JOSE VALDEZ ET AL., RESPONDENTS.

TENANTS IN COMMON — ADVERSE POSSESSION — OUSTER. — Where a tenant in common of land is in possession thereof, acknowledging or with knowledge of the rights of his co-tenants, there must be, in order to constitute an ouster by him of his co-tenants, such acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their own import to impart information and give notice to the co-tenants that an adverse possession and disseisin are intended to be asserted against them; and this rule applies wherever a co-tenant enters under a conveyance which purports to convey a moiety, or any portion less than the whole, or merely the interest of the grantor.

ID. — DEED OF ENTIRETY — EXCLUSIVE POSSESSION UNDER — STATUTE OF LIMITATIONS. — When a conveyance of land is made by a party in the exclu-

sive possession under a deed which purports to convey the whole of the property, and the grantee enters into the open and notorious possession of the whole without notice of a co-tenancy, the entry will be presumed to be in the assertion of an exclusive right in severalty, and is equivalent to an express declaration on the part of the grantee that he enters claiming the whole for himself, and is therefore such a disseisin as sets the statute of limitations in motion in his favor and against his co-tenants.

ID. — DECREE OF DISTRIBUTION — ESTOPPEL. — Under such circumstances, the grantee is not estopped to set up the statute of limitations against the heirs of a former owner by reason of the fact that the decree of distribution of the estate of such owner distributed the land to the heirs.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial.

The facts are stated in the opinion.

*J. Brousseau*, and *Graves & Chapman*, for Appellant.

The facts were sufficient to establish an adverse possession against the defendants. (*American Co.* v. *Bradford*, 27 Cal. 367; *Simson* v. *Eckstein*, 22 Cal. 595; *Kimball* v. *Lohmas*, 31 Cal. 159; *McCracken* v. *San Francisco*, 16 Cal. 636; *Grim* v. *Curley*, 43 Cal. 252; *Unger* v. *Mooney*, 63 Cal. 586; *Nickle* v. *McFarlane*, 3 Watts, 165; *Parker* v. *Proprietors etc.*, 3 Met. 91; S. C., 37 Am. Dec. 121; *Prescott* v. *Nevers*, 4 Mason, 330; *Chambers* v. *Pleak*, 6 Dana, 421; *Boulton* v. *Hamilton*, 2 Watts & S. 294; Wood on Limitation of Actions, sec. 266.) The appellant is not estopped, by the decree of distribution in the Valdez estate, from setting up the statute of limitations. (*Arrington* v. *Liscom*, 34 Cal. 381; *Theller* v. *Such*, 57 Cal. 447.)

*Bricknell & White*, *G. M. Holton*, *Howard & Robarts*, *H. A. Barclay*, and *H. Allen*, for Respondents.

The defendants were tenants in common, and the evidence was insufficient to show a disseisin of them by the plaintiff or his grantors. (*Barrett* v. *Coburn*, 2 Met. 513; *Forward* v. *Deetz*, 32 Pa. St. 72; Freeman on Cotenancy, secs. 221, 229; *Trenouth* v. *Gilbert*, 63 Cal. 407; *Prescott* v. *Nevers*, 4 Mason, 330; *Wall* v. *Wayland*, 2 Met.

158; *Thurston* v. *Masterton,* 9 Dana, 234; *Hart* v. *Gregg,* 10 Watts, 189; *Forward* v. *Deetz,* 32 Pa. St. 73; *Barnitz's Lessee* v. *Case,* 7 Cranch, 456; *Story* v. *Saunders,* 8 Humph. 669; *Seaton* v. *Son,* 32 Cal. 483; *Miller* v. *Myers,* 46 Cal. 539; *Trenouth* v. *Gilbert,* 63 Cal. 407; *Northup* v. *Wright,* 24 Wend. 225.) All that the appellant proved was sole possession, improvements, paying taxes, and reception of profits. It was a silent possession, and however exclusive, the respondents had no notice of its adverse character. Such a possession is wholly insufficient to constitute an ouster as between co-tenants. (*Colman* v. *Clements,* 23 Cal. 247; *Seaton* v. *Son,* 32 Cal. 484; *Miller* v. *Myers,* 46 Cal. 539; *Carpenter* v. *Mendenhall,* 28 Cal. 484; *Carpenter* v. *Mitchell,* 29 Cal. 330; *Packard* v. *Johnson,* 57 Cal. 180; *Keyser* v. *Evans,* 30 Pa. St. 509; *McClung* v. *Ross,* 5 Wheat. 116; Tyler on Ejectment, 882; Sedgwick & Wait on Trial of Title, 540, 541; *Green* v. *Tripp,* 56 Cal. 209.) The decree of distribution in the Valdez estate is conclusive upon the rights of the defendants. (Code Civ. Proc., secs. 1666, 1908; *Hill* v. *Den,* 54 Cal. 23; *Freeman* v. *Rahm,* 58 Cal. 111; *Estate of Hudson,* 63 Cal. 457; *Estate of Garraud,* 36 Cal. 277; *Noe* v. *Splivalo,* 54 Cal. 210; *Holcomb* v. *Sherwood,* 29 Conn. 420.)

SEARLS, C.—This action was brought to quiet title to the north half of lot eight (8), block three (3), of Ord's survey of the city of Los Angeles.

The decree of the court below established the ownership of the plaintiff to an undivided one half of the whole of lot eight (8), and that certain of the defendants were the owners of the other undivided half of said lot, in the proportion of one twelfth each, and that plaintiff had not acquired the interest of the defendants by adverse possession.

The appeal is prosecuted by plaintiff from the judgment, and from an order denying his motion for a new trial.

In 1862, Julian Valdez had title to the premises as the

common property of himself and his wife, Manuela. In 1863, Julian Valdez died intestate, leaving him surviving Manuela, his widow, and his mother and several brothers and sisters, as his heirs. In April of that year, the widow obtained letters of administration. In 1865, Manuela intermarried with one Chavez, and thereafter, in the same year, she and her then husband executed a deed of the premises to one Peppers, by which they remised, released, and quitclaimed "all that lot," describing a tract including the premises in controversy. Under this deed, Peppers took and retained possession until, in July, 1872, she executed a grant, bargain, and sale deed to Burrows, and from Burrows the title comes by mesne conveyances of grant, bargain, and sale to plaintiff. Plaintiff's grantors were respectively in the undisturbed possession of the premises during the periods while they had title; they placed improvements on the property, received the rents, and had the entire enjoyment thereof. Plaintiff purchased in January, 1882, and this suit was commenced in October, 1882. The court also found:—

"That the said plaintiff, his grantors, ancestors, and predecessors, from the 4th of October, 1865, have received all the rents, issues, and profits of the premises, paid all taxes that have been imposed thereon, and occupied the same, and that neither the said plaintiff nor his grantors or ancestors or predecessors, or any of them, ever gave any notice, actual or otherwise, to the defendants, or any of them, that he or they or any of them intended to or did or were claiming and holding the said premises or any part thereof adverse to the said José E. Brigido, Vicente, Juan, Felipe, and María de Los Angeles Valdez, and Guadalupe V. de Rocha, or either or any of them, nor was the said plaintiff, or the said Burrows, or Roques, or the said Dassaud, or the said Goodwin, or any or either of them, ever heard to make or assert any claim to the land in controversy adverse to the said defendants, Valdez or Rocha, or any of them, or

under whom they claim, prior to the commencement of this action."

The court found further that neither the plaintiff nor his grantors, Dassaud, Roques, or Goodwin, or any or either of them, had or claimed to have any knowledge or notice of the interests or claims of the defendants, or any of them, in or to the premises until after the purchase of plaintiff in 1882.

From the marriage of the widow of Julian Valdez, in 1865, until 1882, nothing was done in the administration of the Valdez estate; but in 1882, Brigido Valdez, one of the brothers of the deceased, obtained letters, and such proceedings were had that in 1883, after the commencement of this action, distribution of the property was made by the Superior Court, sitting in probate, one half to Burrows, grantee of Manuela, and the other half to brothers and sisters of the deceased,—one twelfth each, —the mother and one brother having died in the mean time.

The court below based its decree on two propositions, viz.: 1. The plaintiff had not acquired the property as against the heirs of Julian Valdez by virtue of the statute of limitations; and 2. He was estopped by the decree of distribution in probate from asserting that the Valdez heirs had no title.

Some question was made at the hearing in this court as to whether the parties in interest were all before the court.

By a memorandum filed April 9, 1886, we are referred to the various amendments, pleadings, supplemental pleadings, and stipulations whereby they were brought in and the objection obviated.

There is on file a written consent on the part of defendants and respondents that the decree be so modified that the undivided twelfth interest in the premises awarded to Vicente Valdez be decreed to belong to the plaintiff, whereby it is conceded plaintiff is entitled to a

decree for an undivided seven twelfths (7-12) of the premises.

The plaintiff brought his action to quiet title to the north half of lot 8. His testimony showed:—

1. That he had purchased such north half of the lot, and no more; and

2. That he claimed the north half, and no more, by virtue of the adverse possession of himself and his grantors.

The decree should therefore in any event be so modified as to award to plaintiff the undivided seven twelfths (7-12) of the north half only of lot 8.

Such modification of the decree can be made by the court below without the necessity of a retrial of the cause, provided a new trial is not made necessary by the validity of the other errors assigned.

These alleged errors involve the two propositions above mentioned as the basis of the decree, and to them we address our attention: 1. Did plaintiff establish a title under the statute of limitations as against defendants, the heirs of Julian Valdez?

The findings are against the claim under the statute.

It is true that the prominent facts which negative plaintiff's adverse holding under the statute of limitations are to be found in the conclusions of law.

This displacement, however, does not alter or detract from their efficacy as facts, and under the former rulings of this court does not prevent the finding from being accepted as sufficient to support a judgment. (*Jones* v. *Clark*, 42 Cal. 192; *Breuner* v. *Ins. Co.*, 51 Cal. 107; *Edwards* v. *Sonoma Valley Bank*, 59 Cal. 148.)

We shall therefore treat the findings as sufficient in this respect to support the judgment, and confine our attention to the question whether or not the findings are warranted by the evidence.

The testimony on the subject is all one way, and shows that in 1865 Manuela Valdez, the widow of Julian Val-

dez, having intermarried with one Chavez, united with her husband in the execution of a quitclaim deed to one Peppers, by which they remised and quitclaimed to the latter lot No. 8, etc., which deed was properly acknowledged and recorded in 1866.

Peppers entered into possession of the lot, and retained such possession until July, 1872, when she conveyed by deed of grant, bargain, and sale the entire lot to Burrows, and from the latter the title to the north half of the lot passed in July, 1875, to Dassaud and Roques, under whom plaintiff claims through sundry mesne conveyances, all purporting to convey the legal title.

The several deeds of conveyance were recorded at or about the date of their execution.

Plaintiff leased the north half of the lot in 1872 from Burrows for a term of three years, entered into the exclusive possession under his lease, erected improvements thereon, and occupied the land as a tenant of the owners under these deeds until about 1876 or 1877, when he contracted for the purchase of the property from Dassaud and Roques, grantees of Burrows.

He did not obtain a deed under the agreement until January, 1882.

The evidence is ample to show, and we think shows conclusively and without conflict, that plaintiff and his grantors from July, 1875, were in the open, notorious, peaceable, continuous, and exclusive possession of the north half of the lot, claiming to hold, own, and possess the same in their own right, and adverse to all the world.

They placed improvements on the property of the value of eight thousand dollars, and had no knowledge whatever of any claim or pretended claim to said north half of the lot by the heirs of Valdez until in 1882,—a few months before this action was instituted.

We think the evidence entitled the plaintiff to a finding in his favor upon the issues joined under the statute of limitations, unless he and his grantors were bound to

give notice to their co-tenants, the heirs of Valdez, that they held adversely to them.

We infer from the findings that the court below placed great stress upon a want of such notice.

We should doubt the justice of a rule which required the purchaser of real estate from one in the actual and exclusive possession, and who enters into possession under a deed of conveyance purporting to convey the entire title in fee, and who has no knowledge of any tenancy in common therein, to give notice to tenants in common of whose claim or existence he had no knowledge.

To set the statute of limitations in motion in favor of a tenant in common and against his co-tenant requires on his part the exercise of such acts as amount to an ouster of his co-tenant.

Ouster is a wrongful dispossession or exclusion of a party from real property who is entitled to possession.

Ouster, both where the property is owned in severalty and where it is held in divided interests, depends upon the *intent* of the party taking and holding possession.

If a person without title enters into possession of land and subjects it to his will and dominion, claiming and exercising over it the rights of ownership, the inference of his intent to oust the true owner is patent.

A co-tenant, however, has a right of entry upon the realty, and when he does enter and exercise acts of ownership, the law presumes that he intends nothing beyond an assertion of his right, and the apparent intent to oust his co-tenant is wanting.

It is the *intent* with which the necessary acts are performed that must in all cases determine whether or not they amount to an ouster, and to hold that acts which would amount to an ouster against a stranger do not have that effect as against a tenant in common, of whose very existence the co-tenant had no notice and no information to put him on inquiry, is to assert a proposi-

tion which cannot be supported by reason or by the great weight of authority.

The true rules we think are:—

1. Where a tenant in common is in possession acknowledging or with knowledge of the rights of his cotenants, there must to constitute an ouster be such acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature, as by their own import to impart information and give notice to the cotenant that an adverse possession and a disseisin are intended to be asserted against him. (Freeman on Cotenancy, sec. 221.)

2. Where a co-tenant enters under a conveyance which purports to convey a moiety, or any other portion less than the whole, or which purports to convey the interest only of the grantor, the inference is the same as in the first instance mentioned above, and the acts to constitute an ouster must be of like tenor and effect.

3. When a conveyance is made by a party in the exclusive possession under a deed which purports to convey *the whole of the property*, and the grantee enters into the open and notorious possession of the whole without notice of a co-tenancy, the entry will be presumed to be in the assertion of an exclusive right in severalty, and is equivalent to an express declaration on the part of the grantee that he enters " claiming the whole to himself," and is therefore such a disseisin as sets the statute of limitations in motion in his favor.

These propositions are substantially as laid down by Freeman in his work on Cotenancy. (Chap. 10, secs. 221, 227.)

A reference to the authorities cited under sections 223, 224, *supra*, shows that the doctrine which we have enunciated is supported by the most eminent jurists of the country, and in cases so numerous as to leave no doubt as to the weight of authority.

We are aware that a doctrine at variance with these rules is supported by the case of *Seaton* v. *Son,* 32 Cal. 481.

In speaking of this last case, Mr. Freeman, after stating its positions, says: "It states an unqualified proposition of law, and must therefore be considered as in direct conflict with the authorities,—as unsustained and unsustainable."

We confess to a high appreciation of the judgment and experience of the eminent jurist who prepared the opinion in *Seaton* v. *Son, supra,* and it is with great reluctance that we express our dissent from his views; but in the face of the very cogent reasons which seem to us to exist therefor, and in view of the weight of authority the other way, we are forced to the conclusion that if correctly reported, of which there is grave doubt, *Seaton* v. *Son, supra,* cannot be upheld.

Tested by the rules we have formulated, the evidence was sufficient to support the plea of the statute of limitations, and the findings are not supported by but are contrary to the evidence.

The next proposition relates to the estoppel of the plaintiff by the decree of distribution in probate, whereby the undivided one half of the property was decreed to the heirs of Valdez, and the other undivided half to Burrows as assignee of and successor in interest of Manuela Valenzuela de Valdez, the widow.

The widow of Valdez had been appointed administratrix of his estate April 30, 1863, but did nothing toward administering except to qualify. In 1865 the administratrix intermarried with Chavez.

On the twenty-seventh day of April, 1882, Brigido Valdez was appointed administrator of the estate, and such proceedings were had therein that on the twenty-fifth day of June, 1883, the decree of distribution was entered as above specified.

It does not appear that plaintiff was a party to or had

any notice of the proceedings in probate, except what is to be inferred from the usual publication of the notices as by statute required.

We may admit for present purposes that plaintiff is estopped by the decree of distribution so far as he acquired any title to the Valdez estate by the several mesne conveyances through which title from that estate passed to him.

The real question, however, remains, and is, Was he estopped by the decree from setting up the independent estate which he had acquired under the statute of limitations?

Had the plaintiff appeared in the probate proceedings and set up his title adverse to the estate, acquired by him under the statute of limitations, the court had no authority to hear and determine the question thus raised. "The Probate Court has jurisdiction to settle *the estate* of a deceased person, and has no power, save in certain excepted instances, to determine disputes between the heirs or representatives of the deceased and third persons." (*Theller* v. *Such*, 57 Cal. 447.)

It is *the estate* of the deceased upon which the Probate Court administers. It is the title which the deceased had in and to real property at the time of his death, or which has inured to the estate after death and before distribution, which passes to the heirs and devisees.

If there are outstanding or adverse claims to the estate vested in third parties, they are not affected by the probate proceedings, save as in cases of liens, etc., especially provided for by statute.

Actions may be maintained by the executor or administrator of an estate to recover possession of the real property, for partition thereof, or to quiet title thereto. (Code Civ. Proc., secs. 1581, 1582.)

The Probate Court may inquire if the estate has an interest in or title to real property, and if this question is decided in the affirmative, may distribute such estate;

but it has no jurisdiction to determine the quality of the title, whether it be good or bad, but will leave the parties to pursue their remedies in a proper forum. (*Estate of John Dunn,* Myrick's Prob. Rep. 122.)

Judgments in probate are conclusive between the parties and their privies in respect to the matter directly adjudged when litigating for the same thing or under the same title, as in the case of other judgments. (Code Civ. Proc., sec. 1908.)

But the title of plaintiff under the statute of limitations was not and could not be litigated and determined in the Probate Court; hence the judgment of that court distributing the property did not affect that title, and plaintiff is not estopped by the decree.

It follows from these views that the judgment and order appealed from should be reversed, and a new trial ordered.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and cause remanded for a new trial.

THORNTON, J., and McKEE, J., dissented.

ROSS, J., expressed no opinion.

Rehearing denied.