[Civ. No. 2643.   Third Appellate District.—January 25, 1924.]

ELIAS SHAW, Appellant, v. W. E. PALMER, Respondent.

[1] JUDGMENTS—FINALITY—COLLATERAL ATTACK.—The judgment of a
court having jurisdiction of the subject matter of the litigation
of which such judgment is the culmination is conclusive upon the
whole world and it cannot be challenged or attacked in a collateral
proceeding—the remedy of the party aggrieved by the judgment
being by a direct attack on the judgment, as by appeal or, under
certain circumstances, by a suit in equity.

[2] ID.—DECREES OF FINAL DISTRIBUTION—WHEN CONCLUSIVE.—Un-
der section 1666 of the Code of Civil Procedure, decrees of final
distribution of estates are "conclusive as to the rights of heirs,
legatees or devisees, subject only to be reversed, set aside or
modified on appeal"; and in cases of testacy, the decree, in the
absence of a showing of mistake or fraud, is irrevocable, save
upon appeal within the time provided by law, even though it is
in contravention of the terms of the will.

[3] ID.—CLAIM OF ADVERSE TITLE—DECREE NOT CONCLUSIVE.—A de-
cree of final distribution of an estate cannot have the effect of
conclusiveness as against a party, whether he be an heir or a
devisee or a legatee under the will, where he is either a claimant
in his own right in antagonism to the estate, or his individual
property, without his knowledge or consent, has been included
among the assets of the estate and has been assigned by the
decree to the heirs, legatees, or devisees under the will.

[4] ID.—DISPUTED TITLES—JURISDICTION.—The superior court, sitting
in probate, has no jurisdiction or authority to determine disputed
titles to the property of the estate of a deceased person; and
where property is listed as property of the estate of a testatrix,
and is distributed as such to her son, but the surviving husband
claims to be and to have always been the owner thereof in his
separate right, and such right is disputed by the son, the sur-
viving husband is entitled to have the question of his title thereto
litigated and adjudicated by a court having jurisdiction to try
and determine the questions of title to property.

[5] ID. — CONVERSION — REMEDIES. — If a party converts the personal
property of another, it matters not by what means the conversion
is effected; the owner of the property may either proceed in con-
version for damages for the wrongful act or in replevin to re-
cover the specific property or damages if it cannot be restored.

APPEAL from a judgment of the Superior Court of
Sonoma County.   R. L. Thompson, Judge.   Reversed.

The facts are stated in the opinion of the court.

V. L. Hatfield, W. H. Hatfield and J. T. McMenamin for Appellant.

W. F. Cowan and A. W. Hollingsworth for Respondent.

HART, J.—This is an action in conversion and involves the question of the alleged wrongful conversion by defendant of five shares of stock in the Associated Oil Company, a corporation.

The complaint alleges that the certificate of said shares of stock was on or about the eighteenth day of December, 1920, the property and in the possession of the plaintiff, but that on the said eighteenth day of December, the defendant "wrongfully took the said certificate from the possession of plaintiff and converted and disposed of it to his own use, to the damage of plaintiff in the sum of five hundred dollars." It is alleged that, at said time, the said certificate of stock had been indorsed in blank by the plaintiff. The prayer is for judgment for the sum named, with interest, etc.

The answer specifically denies the averments of the complaint, and alleges that the defendant, during all the time mentioned in the complaint, was, "and is now," the owner and entitled to the possession of the said certificate of stock and the shares of the capital stock in the said Associated Oil Company covered thereby; that long prior to the commencement of this action "the said plaintiff transferred and conveyed all the right, title and interest he ever had in and to said certificate." The following special defense is set up: That, prior to the eighteenth day of December, 1920, one Mary Jane Shaw was the owner and entitled to the possession of the said certificate of stock; that said Mary Jane Shaw died testate, in the county of Sonoma, state of California, prior to said eighteenth day of December, 1920; that her last will and testament was thereafter duly probated, and that on the thirty-first day of May, 1921, a decree of distribution of her estate was regularly made and entered; that in and by said decree of distribution, the said certificate of stock was distributed to the defendant, and that "thereupon he became, and ever since has been, and is now, the owner thereof, and the said decree of distribution is final and conclusive and the same has never been modified, annulled, or

revoked, and no appeal has ever been taken therefrom, and the said Mary Jane Shaw, above mentioned, was the wife of said plaintiff."

It appears that the defendant was the son of the deceased by a former husband; that the plaintiff prior to his intermarriage with the deceased, some thirty or more years prior to her decease, had been married to another, and that nine children were the result of that union; that the real property owned by the deceased had, several years prior to her death, been given and transferred to her by the plaintiff. It further appears that the stock in controversy was issued to the plaintiff and that it was indorsed in blank by him immediately upon its issuance and delivery to him.

By her will, the deceased devised to the defendant the real property mentioned and described therein, subject, however, to a life estate in said property to the plaintiff, and bequeathed to the sons and daughters of the plaintiff by his former marriage the aggregate sum of four thousand dollars, to be divided equally among them. Bequests of certain other stock were made to the defendant and one Stephen Meeker. The will made no mention or reference to the stock in dispute. Nor was it included among the assets of the estate as returned or reported in the original inventory. The will did not name a residuary legatee, all of the property of the deceased mentioned in the will being thereby specifically disposed of.

There was testimony that, after the petition for the settlement of the final account and final distribution of the estate had been filed, the certificate of stock in question was for the first time discovered, and the defendant testified that it was found in a tin box belonging to the deceased, in which her will had previously been found, and which was in the possession of a bank at Sebastopol, Sonoma County, where it had always been kept by the deceased in her lifetime. Claiming that the stock was the property of the deceased, notwithstanding that it was in the name of the plaintiff, the defendant, as executor of the will of deceased, took possession thereof, and, by supplemental proceedings, caused the stock to be included in the inventory (sec. 1451, Code Civ. Proc.), and the decree of final distribution was, accordingly, so amended as that said stock was distributed to the defendant as the "residuary legatee," contrary to the terms of

the will, there being, as seen, no residuary legatee mentioned in the instrument.

It was shown that, on the twenty-second day of January, 1921, shortly after the filing of the petition for the probate of the will of the deceased, the plaintiff and the defendant entered into an agreement, in writing, whereby it was mutually agreed that the plaintiff would relinquish and surrender whatever interest he had or might claim in and to the estate of the deceased, upon the consideration that the defendant would provide and furnish the plaintiff a suitable home "and necessary provision" for his natural life, on the premises known as the "Shaw Home Place," and also pay to the children of the plaintiff by his former wife the legacies provided for them in the will of the deceased.

The court found that this agreement was carried out by the defendant. This, however, would, in any event, be of little consequence in the decision of this case, since the terms of the agreement are in harmony with the terms of the will. Indeed, the agreement could not have any application to any property which was not specifically mentioned in the will or included in the inventory at the time that the agreement was made, it appearing that the agreement was made on the twenty-second day of January, 1921, and that the original inventory, while made on January 21, 1921, was not filed until January 27, 1921, and it also appearing, as has been shown, that there was no residuary clause in the will of the deceased.

The court also found that the petition for a decree of final distribution of the estate was duly and regularly filed and due legal notice of the time and place fixed for the hearing thereof given and on the day and at the time so fixed the said matter came on for hearing and that no person appeared to interpose any objection to or protest against the final account and decree, or filed any written objections thereto; that the final account was thereupon settled and the decree entered. The court found as a fact and concluded as a matter of law that the said decree was and has been from the time of its entry final and conclusive as to plaintiff and all other persons, "and by reason thereof the said plaintiff is estopped from asserting any title to the said certificate of stock and from maintaining this action."

Judgment passed accordingly and a motion for a new trial was denied. The appeal is by the plaintiff from the judgment. The issues of fact to which evidence was addressed in the court below were as to the ownership of the stock and, as incidental to that question, or as bearing more or less upon the question of ownership, whether the certificate of stock in dispute was, after the death of the deceased, found in the tin box belonging to her and which was held for her by the bank.

The court made no finding upon that issue, basing its decision, as will be observed, upon the theory that the decree of final distribution was conclusive as against the plaintiff and consequently operated as an estoppel against his claim of title to the stock in controversy. It will, therefore, not be necessary to present a detailed statement of the testimony. It will suffice to say, generally, that the plaintiff testified that he bought the shares of stock with his own separate money; that he had never sold or transferred the same to any other person and that said property still belonged to him. The defendant, on the other hand, testified that the stock was purchased by his mother, the deceased, and at her request, and for the reason, as she declared when the stock was purchased by her, that she did not desire to be annoyed with the consequences of a stockholder's liability, authorized the certificate to be issued in the name of her husband, the plaintiff herein, and that it was for that reason that the plaintiff indorsed the stock in blank, etc.

The conclusion of the trial court, as crystallized in its decision and judgment, is founded on an erroneous theory. [1] It is, of course, manifestly true and, indeed, elementary, that the judgment of a court having jurisdiction of the subject matter of the litigation of which such judgment is the culmination is conclusive upon the whole world, and that, as a necessary corollary of that doctrine, it cannot be challenged or attacked in a collateral proceeding. The remedy of the party aggrieved by the judgment must be by a direct attack on the judgment, as by appeal; or, in case the time for appealing has lapsed, then by a suit in equity, if there exist grounds—for instance, extrinsic fraud or mistake brought about by fraud—for vitiating the effect of the judgment which will justify a court of equity in interposing its remedial aid in behalf of the party claiming

to be aggrieved thereby; or by proceeding, within the time prescribed, under section 473 of the Code of Civil Procedure. [2] As to the conclusiveness of decrees of final distribution, section 1666 of the Code of Civil Procedure controls. It provides, *inter alia,* that such decrees are "conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside or modified on appeal." And by virtue of the terms of that section, in the case of testacy, the decree, "in the absence of a showing of mistake or fraud, is irrevocable, save upon appeal within the time provided by law, *even though it was in contravention of the terms of the will."* (*Miller* v. *Pitman,* 180 Cal. 544 [182 Pac. 50].)

[3] But, obviously, such decree cannot have the effect of conclusiveness as against a party, whether he be an heir or a devisee or a legatee under the will, where he is either a claimant in his own right in antagonism to the estate, or his individual property has been, without his knowledge or consent, included among the assets of the estate and has been assigned by the decree to the heirs, legatees or devisees under the will. (*Bath* v. *Valdez,* 70 Cal. 350 [11 Pac. 724]; *Estate of Rowland,* 74 Cal. 523, 526 [5 Am. St. Rep. 462, 16 Pac. 315]; *In re Clark's Estate,* 190 Cal. 354 [212 Pac. 622]; *Estate of Wenks,* 171 Cal. 607 [154 Pac. 24].)

In *Bath* v. *Valdez, supra,* the action was to quiet title to certain real property of which the plaintiff claimed ownership, but which the court, sitting in probate, had previously, by its decree of distribution, entered in the matter of the estate of Julian Valdez, deceased, distributed to the defendant. The defendant, in the action to quiet title, interposed, among other defenses, the plea of estoppel, based on the decree of distribution in the probate proceedings, in the estate of said Julian Valdez, deceased. The trial court upheld the plea of estoppel and gave judgment to the defendant. On appeal the judgment was reversed, the court saying, after disposing of another point:

"The real question, however, remains, and is, was he (plaintiff) estopped by the decree from setting up the independent estate which he had acquired under the statute of limitations. Had the plaintiff appeared in the probate proceedings and set up his title adverse to the estate, acquired by him under the statute of limitations, the court had no authority to hear and determine the question thus raised.

'The probate court has jurisdiction to settle *the estate* of a deceased person, and has no power, save in certain excepted instances, to determine disputes between the heirs or representatives of the deceased and third persons,' citing *Theller v. Such,* 57 Cal. 447. It is *the estate* of the deceased upon which the probate court administers. It is the title which the deceased had in and to real property at the time of his death, or which has inured to the estate after death and before distribution, which passes to the heirs and devisees. If there are outstanding or adverse claims to the estate vested in third parties, they are not affected by the probate proceedings, save as in cases of liens, etc., especially provided for by statute. Actions may be maintained by the executor or administrator of an estate to recover possession of the real property, for partition thereof or to quiet title thereto. (Code Civ. Proc., secs. 1581 and 1582.) The probate court may inquire if the estate has interest in or title to real property, and if this question is decided in the affirmative, may distribute such estate; but it has no jurisdiction to determine the quality of the title, whether it be good or bad, but will leave the parties to pursue their remedies in a proper forum. (*Estate of John Dunn,* Myrick's Prob. Rep. 122.)''

In *In re Estate of Rowland, supra,* the appellant made claim in the probate court that certain money and property in the hands of the executors of the will of the deceased constituted community property of the appellant and deceased and asked that the same be segregated from the separate property of the testatrix and delivered to him instead of being distributed to a legatee under the will. It was the contention on appeal that the claim of the appellant was concluded by the decree of distribution. The court, holding that contention to be untenable, said:

''Under section 1666, Code of Civil Procedure, the decree is only made conclusive as to the rights of heirs, legatees, and devisees. As appellant does not, as to the claim, come within the category of these, he will not be bound thereby. He appears in a twofold capacity: 1. As a legatee under the will, and as to his rights as such he will be bound by the decree; and 2. As a claimant, in his own right, antagonistic to the estate. In this latter capacity he will be no more concluded than a third party would be, who might chance to claim real estate adversely to decedent and his representa-

tives. (Freeman on Judgments, sec. 66, and cases cited; *Bath* v. *Valdez*, 70 Cal. 359 [11 Pac. 724].) If, as may well be, his demand only amounts to a claim against the estate, which should have been presented to the executors, it cannot alter the case as presented here.''

In this case the situation is simply this: That the plaintiff was a devisee under the will of his deceased wife; that property which he claimed to be his in his own separate right was not mentioned in the will, nor in the inventory originally filed, but was by the executor of the will subsequently included in the list of the assets of the estate; that the plaintiff had no other or further notice of the fact that said property was a part of the estate administered upon and distributed to one of the heirs and devisees under the will than the constructive notice prescribed by law; in other words, he had no actual notice of the fact that his separate property had been included in the property of the estate and distributed as an asset of the estate.

[4] The superior court, sitting in probate, has no jurisdiction or authority to determine disputed titles to the property of the estate of a deceased person. (See cases above cited.) The plaintiff claims to be and to have always been the owner in his separate right of the stock in controversy, and, as that claim is disputed by the party to whom the stock was distributed, he has the right to have the question of his title thereto litigated and adjudicated by a court having jurisdiction to try and determine questions of title to property. The fact that the plaintiff was also a devisee under the will of the deceased does not alter the situation. As stated in the cases above cited, he was bound by the decree only in so far as he was an heir, a devisee or a legatee. He certainly could not be bound by the decree in so far as it purported to distribute his separate property no more than could a third party or an entire stranger to the will of the deceased and the proceedings attending the administration of the estate could be bound thereby. Let it be supposed that the executor of a will of a deceased person should cause to be included in the inventory setting forth the property 'and other assets of the estate of the deceased the real or personal property of a person in no way connected with the deceased or her estate and not mentioned in the will, and that such property was distributed to the heirs according to the terms of the will. Could it

be said that in such case such party would be bound by the decree of distribution so that he could not maintain an action for the recovery of such property against the heirs to whom the same had been distributed by the probate court? The question answers itself. The plaintiff here is, as to the property in dispute, if it be his separate property, as much a stranger to the probate proceedings in which his wife's estate was administered as though he were not an heir or a devisee under the will of the deceased. It is a maxim of our law that there is no wrong without a remedy, but if a party were to be held bound by a decree of distribution giving his individual property to some other person, he would be wholly remediless, since the question of title cannot be tried in the superior court sitting in probate, and to the maxim referred to we would, in its application, meet with a manifestly absurd as well as a disastrous exception. Of course, if the plaintiff in this case, at the time the estate was undergoing administration and the final decree was entered, had actual knowledge of the fact that the stock had been listed as a portion of the estate of the deceased and that a decree distributing the property to the defendant had been entered and he at no time made any protest against or objection thereto, there being no fraud or misrepresentation or mistake at the bottom of his silence, he might be held to be estopped, not by the judgment or decree, however, but by estoppel *in pais,* particularly if the property so distributed had, before he took any steps to have the matter corrected, gotten into the hands of innocent purchasers. Or, he would probably be bound if, after obtaining knowledge of the fact that his property had thus been disposed of failed to proceed to assert his rights until after the statute of limitations had barred them. But this case comes within neither of the exceptions just referred to.

[5] We conclude that an action in conversion affords the proper remedy for the relief sought by the plaintiff. If a party converts the personal property of another, it matters not by what means the conversion is effected, the owner of the property may either proceed in conversion for damages for the wrongful act or in replevin to recover the specific property or damages if it cannot be restored.

The judgment is reversed.

Plummer, J., and Finch, P. J., concurred.