Filed 9/28/21

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| DOUGLAS HUMPHREY, <br><br>   Plaintiff and Appellant, <br><br> v. <br><br> PETER D. BEWLEY, as Administrator, etc., et al., <br><br>   Defendants and Respondents. | E074339 <br><br> (Super.Ct.No. INC1207805) <br><br> OPINION |

APPEAL from the Superior Court of Riverside County.  Mickie E. Reed,

Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed in part, reversed in

part, and remanded with directions.

  REQUEST FOR AUGMENTATION.  Granted.

  REQUEST FOR JUDICIAL NOTICE.  Denied.

  Christopher Kelley and Denise L. Diaz for Plaintiff and Appellant.

---

  [*]  Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this
opinion is certified for publication with the exception of parts III, IV, V, VII, and IX.

Bochnewich Law Offices, Peter M. Bochnewich, and Jacquetta Bardacos for Defendant and Respondent Peter D. Bewley as Administrator of the Estate of Grace Janelunas Newswanger and Administrator of the Estate of Val J. Janelunas.

This action concerns a piece of property in Rancho Mirage. At one time, the owners of record were Val Janelunas and his father, Joseph Janelunas, as joint tenants; however, Joseph died, leaving Val as sole owner. Thereafter, Val died.

Plaintiff Douglas Humphrey asserts a claim to the property; he filed this action to quiet title to it, and he filed a lis pendens. He served process by publication. None of the named defendants (including Val Janelunas's heirs) responded. At Humphrey's request, the trial court entered their default.

Thereafter, Peter Bewley became the administrator of Val Janelunas's estate.[1] He filed a motion to intervene, so he could move to expunge the lis pendens. In response, Humphrey withdrew the lis pendens; the trial court then denied the motion to intervene as moot. Bewley proceeded to sell the property.

Humphrey then filed a request for a prove-up hearing and a default judgment. Bewley filed objections. At an unreported hearing, the trial court, on its own motion, quashed the service by publication and vacated the default.

Humphrey appeals. He contends:

---

[1] All references to Bewley are to him solely in his capacity as administrator and not in his personal capacity.

2

1. Humphrey properly effected service by publication, and therefore the trial court erred by quashing service, by vacating the default, and by failing to hold a prove-up hearing.

2. The trial court should not have quashed service as to Val Janelunas's heirs because Bewley had made a general appearance.

3. The trial court erred by setting aside the default on its own motion because Bewley had not moved to set it aside within a reasonable time.

In response, Bewley not only disputes Humphrey's contentions, but also contends:

1. The trial court's order is not appealable.

2. Bewley is not a proper party to this appeal because he was never a party below and because Humphrey did not name him in the notice of appeal.

3. The probate court had exclusive jurisdiction over the property.

4. Humphrey has no valid claim to the property.

In the published portion of this opinion, we will hold that the trial court's order granting the motion to quash is appealable, and in such an appeal we may also review its order vacating the default. We will also hold that Humphrey did not properly effect service by publication because the notices that he published specified the property only by assessor's parcel number (APN) and not by either legal description or street address. However, we will also hold that Bewley made a general appearance. Accordingly, the trial court erred by quashing service on Bewley, but not by quashing service on other parties who had not appeared nor by vacating the default.

3

In the unpublished portion of this opinion, we will reject all of the parties' other contentions.

## I

## STATEMENT OF THE CASE

In November 2012, Humphrey filed this action to quiet title. He named as defendants (1) the successors of Val Janelunas, (2) the successors of Joseph Janelunas, and (3) all other persons claiming any interest in the property. On September 5, 2013, he filed an amended complaint.

On July 2, 2014, Humphrey recorded a notice of lis pendens.

Also on July 2, 2014, the trial court ordered service of the summons and first amended complaint by publication. In August and September, 2014, Humphrey filed proof of service by publication.[2] On September 25, 2014, at Humphrey's request, the trial court entered the default of all named parties.

Three years passed; a lot did happen in the action, involving various other parties who showed up and participated, but nothing that is relevant to this appeal.

On September 18, 2017, Bewley was appointed administrator of the estate of Val Janelunas.[3]

---

[2]    The proof of service was filed in three parts: (1) on August 11, 2014, proof of publication in California; (2) also on August 11, 2014, proof of posting at the property; and (3) on September 12, 2014, proof of publication in Pennsylvania.

[3]    Bewley was also appointed administrator of the estate of Grace Janelunas Newswanger, Val's mother. As far as we can tell, this does not affect our analysis of any issue.

On September 6, 2018, Bewley filed a "motion for leave to intervene to expunge lis pendens."[4] (Capitalization altered.) While the motion was pending, Bewley filed a case management statement. On November 29, 2018, Humphrey withdrew the lis pendens. On December 5, 2018, the trial court therefore denied Bewley's motion to intervene as moot.

Sometime between March 9 and May 30, 2019, Bewley sold the property.

On May 30, 2019, the probate court ordered the final distribution of the estate.

On October 9, 2019, Humphrey filed a request for a default prove-up hearing. It was set for October 18. Bewley, in what he labeled a special appearance, filed objections to the default prove-up.

At the hearing on October 18, 2019, the trial court, on its own motion, quashed the service by publication, finding that it was "improper," and set aside the default. There was no court reporter at that hearing.[5]

## II

## APPEALABILITY

Preliminarily, Bewley contends that the trial court's order is not appealable.

Code of Civil Procedure section 904.1, subdivision (a)(3), provides that "an order granting a motion to quash service of summons" is appealable. (See also *Templeton*

---

[4] Bewley now describes this as a "special[] appear[ance]." However, he did not label it a special appearance at the time.

[5] Humphrey sought and obtained a settled statement. (Cal. Rules of Court, rule 8.137.) However, it did not provide any information not already in the minute order.

*Action Committee v. County of San Luis Obispo* (2014) 228 Cal.App.4th 427, 432.)

Bewley seeks to draw a distinction between a motion to quash based on lack of minimum contacts with the forum and a motion to quash based on lack of proper service. An order granting the former is effectively a final judgment. By contrast, an order granting the latter is interlocutory; the plaintiff remains free to attempt new and better service. In Bewley's view, then, only an order based on lack of minimum contacts should be appealable.

Bewley cites no authority in support of this position, and we have found none.

In 1951, Code of Civil Procedure former section 963 — the predecessor of Code of Civil Procedure section 904.1 — was amended to provide for the first time that an order granting a motion to quash service of summons is appealable. (Stats. 1951, ch. 234, § 1, p. 497.) Thus, until 1951, Bewley's position was at least arguable. (See *Kneeland v. Ethicon Suture Laboratories* (1952) 113 Cal.App.2d 335, 336-338; *Thomas v. Lee* (1949) 90 Cal.App.2d 44, 45.)

As amended, however, the statute is unambiguous. It states flatly that an order granting a motion to quash service of summons is appealable. "'[W]hen statutory language is . . . clear and unambiguous there is no need for construction and *courts should not indulge in it*.' [Citation.]" (*Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 413.)

Bewley also argues that the order setting aside the default is not appealable. As he points out, "no appeal lies from an order granting a motion to vacate a default entry

where no default judgment has been entered [citation]. [Citations.]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2021) ¶ 2:167, p. 2-122, italics omitted.) Here, however, the order granting the motion to quash and the order setting aside the default are inextricably interwoven. Under these circumstances, we have jurisdiction to review and, if necessary, to reverse both. (See *American Enterprise, Inc. v. Van Winkle* (1952) 39 Cal.2d 210, 216-218; see, e.g., *Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1283 [reversal of judgment necessarily reversed award of attorney fees, even though award of fees was separately appealable and appellant did not appeal from it].)

### III

### BEWLEY AS A PARTY TO THIS APPEAL

Bewley argues that he is not a proper party to this appeal. Although he has filed a brief anyway, apparently his point is that "this Court . . . is without jurisdiction to issue a ruling that would bind Administrator Bewley . . . ."

First, he argues that a "[r]espondent must . . . generally be both (1) a party of record; and (2) legally 'aggrieved.'" Not so. An appellant must be aggrieved, but not a respondent; a respondent need only be "an adverse party." (Code Civ. Proc., § 902; Cal. Rules of Court, rule 8.10(2).)

Next, he argues that he was not a named party below. In his view, the parties named as "the testate and intestate successors of Val Jay Janelunas" (capitalization altered) are not the same thing as "Peter D. Bewley as administrator of the estate of Val J.

7

Janelunas." But the administrator of a decedent's estate is the decedent's successor, by definition. Even if not, the complaint also named "all persons unknown claiming any legal or equitable right, title, estate, lien or interest to the property . . . adverse to [Humphrey's] title, or any cloud on [Humphrey's] title thereto." (Capitalization altered.) That included Bewley.

More generally, a quiet title action is in rem; a judgment, once obtained, is good "against the world." (*Deutsche Bank National Trust Co. v. McGurk* (2012) 206 Cal.App.4th 201, 215.) It follows that a default, once obtained, is likewise good against the world. Again, that included Bewley.

Bewley also argues that Humphrey did not name him in the notice of appeal. However, "'there is no provision of law requiring the notice of appeal to be addressed to the opposite party.'" (*Balkins v. Norrby* (1943) 61 Cal.App.2d 413, 415; see generally Cal. Rules of Court, rule 8.100.) Humphrey did serve the notice of appeal on Bewley.

Finally, he argues that he made only a special appearance below. In part VII, *post*, we will hold that he actually made a general appearance. In any event, a party that has made only a special appearance is a proper party to an appeal arising out of that special appearance. (See, e.g., *Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 549-552.)

8

## IV

## EXCLUSIVE JURISDICTION OF THE PROBATE COURT

Bewley contends that the probate court had exclusive jurisdiction of the property. Under this general heading, he also argues that (1) Humphrey's claim is barred because he failed to file a timely creditor's claim (see Prob. Code, § 9002), and (2) the probate court's order for distribution is final and binding on Humphrey (see Prob. Code, § 11605). Unhelpfully, Humphrey does not respond.

These contentions are not properly presented in this appeal. "[A]s a general rule, respondents who fail to file a cross-appeal cannot claim error in connection with the opposing party's appeal. [Citations.]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2021) ¶ 8:195, p. 8-160, italics omitted.) "The general rule is subject to a limited statutory exception: Appellate courts can review error upon respondent's request, even though respondent has not filed a cross-appeal, for the purpose of determining whether appellant was prejudiced by the error appellant asserted on appeal. [Citations.]" (*Id.* at ¶ 8:196, p. 8-160, italics omitted.)

The trial court quashed service and vacated the default. It left Humphrey free to try to effect service again. Humphrey claims that it should have allowed the service and the default to stand. Bewley's contention that the probate court had exclusive jurisdiction, and his subsidiary statutory contentions, do not go to whether the asserted errors were harmless; rather, they go to whether Humphrey can ultimately prevail on his claim. Accordingly, we cannot entertain them in this appeal.

9

We must also decline to reach these contentions for an additional reason: They are not germane to the trial court's ruling. Once again, the trial court vacated the default and quashed service of summons. It did not hold a default prove-up hearing; therefore, it never ruled on whether Humphrey's claim was meritorious. "In other words, there is simply no ruling for us to review." (*Farmer Bros. Co. v. Franchise Tax Bd.* (2003) 108 Cal.App.4th 976, 993.)

In part VII, *post*, we will hold that the trial court *properly* vacated the default, *properly* did not hold a default prove-up, and *properly* did not rule on whether Humphrey's claim was meritorious. It should have denied the motion to quash, and it should have given Bewley time to respond to the complaint. On remand, Bewley may, at his option, demur based on these contentions, or he may raise them in some other way. At this point, however, these contentions are not ripe for appeal.

V

THE VALIDITY OF HUMPHREY'S CLAIM TO THE PROPERTY

Bewley contends that Humphrey has no valid claim to the property, as established by the law of the case and by judicial estoppel. He also contends that the withdrawal of the lis pendens bars Humphrey from further litigating a quiet title cause of action. (See Code Civ. Proc., § 763.040.) Once again, Humphrey does not respond.

For the reasons already stated in part III, *ante*, these contentions are not properly presented in this appeal. They do not go to whether the errors that Humphrey is asserting were harmless. And they are not germane to the trial court's ruling.

10

Separately and alternatively, Bewley forfeited all of these arguments (other than his law of the case argument), at least for purposes of this appeal, by failing to raise them below. "'It is axiomatic that arguments not raised in the trial court are forfeited on appeal.' [Citation.]" (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1074.)

He did argue that the property had already been sold "with the authority of the [probate c]ourt . . . ." He also argued that the probate court was "the proper place to determine the disposition of property from any decedent's . . . estate." He concluded that Humphrey no longer had a valid claim to the property.

He did not argue, however, that the probate court's jurisdiction was exclusive. This particular issue does not go to "fundamental" jurisdiction; therefore, it can be forfeited if not raised in the trial court. (*Harnedy v. Whitty* (2003) 110 Cal.App.4th 1333, 1345; *In re Michael R.* (2006) 137 Cal.App.4th 126, 146.) He also did not raise his statutory contentions below. Certainly he did not cite the relevant statutes.

He has further forfeited the statutory issues on appeal by failing to discuss the *nature* of Humphrey's claim to the property. Indeed, neither side has asked that the complaint or the first amended complaint be included in the appellate record.[6] He merely asserts, in passing, that Humphrey's "claim [is] that he should take the property by adverse possession." In support, he cites only his own motion to intervene.

---

**6** They do happen to be included, fortuitously, as attachments to Bewley's request for judicial notice in support of his motion to intervene.

11

Bewley relies on Probate Code section 9100, which requires a creditor to file a timely claim. He has not shown, however, that Humphrey had a "claim" and was a "creditor" within the meaning of this section. If Humphrey is claiming by adverse possession, "'"[i]t is well settled that one who claims as his own, adversely to an estate, specific property held and claimed by the estate, cannot be called a creditor of the estate within the meaning of the probate law . . . "'" [Citation.]" (*Pay Less Drug Stores v. Bechdolt* (1979) 92 Cal.App.3d 496, 501; see also Prob. Code § 9000, subds. (b), (c).)

Bewley also relies on Probate Code section 11605. That section is part of Division 7, Part 10, Chapter 1 of the Probate Code, entitled, "Order for Distribution." It provides, "When a court order made under this chapter becomes final, the order binds and is conclusive as to the rights of all interested persons."

Bewley has not shown that Humphrey was an "interested person." "Persons claiming *adversely* to the property included in the order are not bound by the order for distribution. [Citation.]" (Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2021) ¶ 16:423, p. 16-122.) "[A] decree of distribution does not determine that the deceased had any title to the property distributed, nor does it bind third persons who claim an interest adverse to that of a testator. It merely determines the succession or testamentary disposition of such title as the decedent may have had. [Citation.]" (*Romagnolo v. Romagnolo* (1964) 230 Cal.App.2d 315, 319; accord, *Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 236.)

12

We also note that the probate court's jurisdiction to adjudicate adverse claims to property of the estate (Prob. Code, § 850) is concurrent, not exclusive. "Accordingly, a third party claimant may bring an independent civil action, e.g., to quiet title . . . . [Citation.]" (Ross & Cohen, Cal. Practice Guide: Probate, *supra*, ¶ 15:562, p. 15-159.)[7]

"We are not required to develop [respondents'] arguments for them. [Citation.]" (*Los Angeles Unified School District v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 498.) Because Bewley has not provided any reasoned analysis of his statutory arguments — and in particular, because he has not shown that Humphrey was *not* claiming the property adversely to the estate — he has forfeited them for purposes of appeal. (*Sviridov v. City of San Diego* (2017) 14 Cal.App.5th 514, 521.)

VI

THE VALIDITY OF THE SERVICE BY PUBLICATION

Humphrey contends that the named defendants were properly served. Bewley responds that the publication did not adequately describe the property. We agree.

In a quiet title action, "Whenever the court orders service by publication, the order is subject to the following conditions: [¶] . . . [¶] . . . The publication shall describe the property that is the subject of the action. In addition to particularly describing the property, the publication shall describe the property by giving its street address, if any, or

---

**7** Humphrey's response to this contention is not particularly helpful. He merely cites *Shaw v. Palmer* (1924) 65 Cal.App. 441 for the proposition that the probate court has *no jurisdiction whatsoever* to try title. (*Id*. at p. 447.) The enactment of Probate Code section 850 legislatively overruled *Shaw* on this point. (See generally Ross & Cohen, Cal. Practice Guide: Probate, *supra*, ¶ 15:555, pp. 15-156—157.)

13

other common designation, if any; but, if a legal description of the property is given, the validity of the publication shall not be affected by the fact that the street address or other common designation recited is erroneous or that the street address or other common designation is omitted." (Code Civ. Proc., § 763.020.)

Here, the trial court's order for publication (proposed by Humphrey's counsel) provided: "[T]he [assessor's] parcel number of the affected property . . . shall be published below the First Amended Summons in the newspaper publications." The proofs of service showed that the published notices did not include the legal description or the street address of the property; in accordance with the order, however, they did include the APN.

This did not comply with Code of Civil Procedure section 763.020. Service by publication requires strict compliance with the applicable statutes. (*County of Riverside v. Superior Court* (1997) 54 Cal.App.4th 443, 450.) The publication must "particularly" describe the property, and must also give its street address. We may assume, for purposes of argument, that an APN is a sufficiently particular description. Even if so, the published notices here did not also include the street address. The statute provides that, *if* a legal description is given, *then* the omission of the street address is not fatal. Here, however, the legal description was not given. By negative implication, the omission of the street address *is* fatal.

Another way to look at it is that the APN is a sufficient "common designation," in lieu of the street address. On that view, however, the publication must also "particularly

14

describ[e]" the property.  In sum, the APN cannot serve as *both* the particular description *and* the common designation.

Humphrey does not argue otherwise.  He argues only that the trial court "specifically approved" posting the APN.  "The trial court's quashing the service by publication years after it occurred, on its own motion, after approving and accepting it at the time, is clearly an abuse of discretion."  This argument is wrong, for three reasons.

First, the trial court ordered that the APN be published.  It did not order that *only* the APN be published.

Second, a trial court has the inherent "ability, on its own motion, to reconsider its prior interim orders so it may correct its own errors."  (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107; see also *id*. at pp. 1100-1101, 1103, 1105.)

Third, the trial court issued the order for publication ex parte.  Indeed, Humphrey's ex parte application did not expressly request an order that only the APN be published.  Rather, Humphrey's counsel slipped this provision into the proposed order, and the trial court signed it.  As a matter of due process, this unilateral action cannot preclude a defendant from coming along later and arguing that the publication was defective.

The trial court therefore correctly vacated the default.

VII

REQUESTS FOR JUDICIAL NOTICE AND AUGMENTATION

After we issued our tentative opinion (see Ct. App., Fourth Dist., Div. Two,
Internal Operating Practices & Proc., VIII, Tentative opinions and oral argument),
Humphrey filed a request for judicial notice and a request to augment.

A.     *Request for Judicial Notice.*

Humphrey asked us to take judicial notice which showed that the property had no
street address.  His apparent point was that it was therefore appropriate for the published
notices to identify the property solely by APN.

We deny the request because Humphrey never asked the trial court to take judicial
notice of this document.  "Reviewing courts generally do not take judicial notice of
evidence not presented to the trial court.  Rather, normally 'when reviewing the
correctness of a trial court's judgment, an appellate court will consider only matters
which were part of the record at the time the judgment was entered.' [Citation.]" (*Vons
Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

We also deny the request because the document is not relevant.  (See *People ex
rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2.)  As discussed in
part VI, *ante*, notice by publication in a quiet title action must include either:  (1) a
particular description (other than the legal description) plus a common designation; (2) a
particular description (other than the legal description) plus the street address; or (3) the
legal description.  If a property has no street address, the plaintiff cannot use option (2).

16

Therefore, the plaintiff must use option (1) or option (3). Humphrey did not do so. Thus, even if we granted the request for judicial notice, it would not change our analysis.

B.      *Request to Augment.*

Humphrey asked us to augment the record with a June 25, 2013 proof of service. That proof of service is already in the record. Humphrey claims, however, that the attached copies of the published notices are more legible than those in the record. He asserts (although not under oath) that they were downloaded from the superior court's online imaging system. His point is that they show that the published notices included not only the APN, but also the following "abbreviated legal description:" "1.60 Acres M/L in POR NW 1/4 of SCC 30 T4S R6E."

In the interest of having an accurate record, we grant the request. Bewley argues that the request is untimely. However, it is made in response to our tentative opinion, which highlighted the importance of the contents of the published notices. Thus, there is good cause for the lateness of the request.

We conclude, however, that the June 25, 2013 proof of service is all but irrelevant.

First, the June 25, 2013 proof of service, and thus the published notices attached to it, relate to the *original complaint*, not the *first amended complaint*. After Humphrey filed the first amended complaint, the trial court ordered him to serve the summons and first amended complaint by publication. Thus, the eventual default was not based on the June 25, 2013 proof of service; it was based on proofs of service (with different attached published notices) filed in August and September 2014.

17

Second, the June 25, 2013 proof of service relates only to service by publication in Pennsylvania. It does not show that there was also good service by publication in California.

Third — but most important — the "abbreviated legal description" is not the legal description. The true legal description of the property is hundreds of words long. Humphrey claims that "1.60 Acres M/L in POR NW 1/4 of SCC 30 T4S R6E" translates as "1.60 Acres more or less in a portion of the northwest quarter of Section 30 in Township 4 South, Range 6 East." We question whether that would be apparent to the ordinary reader in California, much less one in Pennsylvania. In any event, it does not specify *which* 1.60 acres in the northwest quarter of Section 30 in Township 4 South, Range 6 East. The full legal description, by contrast, does. We need not decide whether some abbreviation is permissible, or if so, how much. At a minimum, it must be possible to identify the property from the abbreviated description. Here, it is not.

## VIII

## THE EFFECT OF BEWLEY'S APPEARANCE

Humphrey contends that the trial court erred by quashing service because Bewley had made a general appearance.

Bewley protests that the service by publication was defective. (See part VI, *ante*.) But "[a] general appearance by a party is equivalent to personal service of summons on such party." (Code Civ. Proc., § 410.50, subd. (a).) It makes up for defective service, or

even a complete lack of service. (*Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145.)

"The determination of special appearance versus general appearance is based on the 'character of the relief sought,' not by statements of intention of the party. [Citation.]" (*In re D.R.* (2019) 39 Cal.App.5th 583, 593.) "'"What is determinative is whether [the] defendant takes a part in the particular action which in some manner recognizes the authority of the court to proceed."' [Citations.] "'[I]f an appearance is for any purpose other than to question the jurisdiction of the court[,] it is general.'" [Citations.]" (*Sunrise Financial, LLC v. Superior Court* (2019) 32 Cal.App.5th 114, 125 [243 Cal.Rptr.3d 623, 631.)

Humphrey asserts that Bewley made a general appearance by (1) filing and litigating the motion to intervene, (2) filing a case management statement, and (3) opposing Humphrey's request for a default prove-up. We consider only the motion to intervene, because we agree that it was a general appearance.

A motion to intervene does not question the jurisdiction of the court. To the contrary, it affirmatively asks the court to exercise jurisdiction. Thus, it recognizes the authority of the court to proceed.

Bewley cites Code of Civil Procedure section 1014, which lists certain actions, such as filing an answer, which constitute a general appearance; he then argues that he did not take any of the listed actions. It has repeatedly been held, however, that "this list

19

'is not exclusive.' [Citations.]" (*Sunrise Financial, LLC v. Superior Court*, *supra*, 32 Cal.App.5th at p. 125.)

Bewley also argues that his general appearance had no effect because he was not a named party. As we already held in part III, *ante*, the complaint named "all persons unknown claiming any legal or equitable right, title, estate, lien or interest to the property . . . adverse to [Humphrey's] title, or any cloud on [Humphrey's] title thereto." (Capitalization altered.) Bewley came within that description.

One could argue that the motion to intervene did not constitute a general appearance for another reason — that it was a nullity. A default had been entered, and for the reasons just discussed, it included Bewley. "As a general rule, 'the entry of a default terminates a defendant's rights to take any further affirmative steps in the litigation until . . . the default is set aside.' [Citations.]" (*In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1037.) Any motion by a defaulted defendant, other than a motion to set aside the default, is "'unauthorized and void.'" (*A & B Metal Products v. MacArthur Properties, Inc.* (1970) 11 Cal.App.3d 642, 647.) It has "no legal effect." (*Christerson v. French* (1919) 180 Cal. 523, 525.)

Bewley does not actually raise this argument. And wisely so, as it has previously been rejected by *Forbes v. Cameron Petroleums, Inc.* (1978) 83 Cal.App.3d 257. *Forbes* held that "that a demurrer filed by defendant after his default is taken constitutes a general appearance." (*Id*. at p. 264.) This is true even though "a demurrer or answer filed after entry of default" is otherwise a "nullity." (*Id*. at pp. 263-264.)

20

We have also considered another argument that Bewley does not raise: that his motion to intervene was not a general appearance because it was denied (or, to look at it another way, it was a general appearance, but personal jurisdiction terminated when it was denied). As already discussed, however, because Bewley was in default, the motion was a nullity *except as a general appearance*. It did not give the trial court the authority to determine whether Bewley should or should not be allowed to participate in the action.

Even though Bewley did make a general appearance, the trial court did not err by vacating the default sua sponte. A general appearance does not retroactively validate a default entered earlier. (*In re Marriage of Smith* (1982) 135 Cal.App.3d 543, 547-552.) As mentioned, Code of Civil Procedure section 410.50, subdivision (a) merely provides that a general appearance is the equivalent of service of summons. Subdivision (b) then provides, "Jurisdiction of the court over the parties and the subject matter of an action continues throughout *subsequent proceedings* in the action." (Italics added.) The service of summons in 2018 would not support a default entered in 2014. (See *Moffett v. Barclay* (1995) 32 Cal.App.4th 980, 983.)

The trial court did err, however, by quashing service as to Bewley. Even though the service by publication was invalid, he had made a general appearance and was subject to its personal jurisdiction. Instead, it should have given him 15 days after service of a written notice of entry of its order to respond to the complaint. (See Code Civ. Proc., § 418.10, subd. (b).)

## IX

### THE TIMELINESS OF THE TRIAL COURT'S MOTION TO ASIDE THE DEFAULT

Humphrey contends that the trial court should not have set aside the default on its own motion. Essentially, he argues that Bewley knew that the action was pending and failed to move to set aside the default within a reasonable time. This time, it is Bewley who does not respond.

Humphrey forfeited this contention because, due to the lack of a court reporter, he cannot show that he raised it below.

Illustrating the problem, Humphrey asserts that Bewley became aware of this action long before becoming administrator. In support, he cites Bewley's motion for leave to intervene and his own opposition to that motion. These documents, however, were not before the trial court when it ruled. Without a reporter's transcript, Humphrey cannot show that he called them to the attention of the trial court.

The contention lacks merit in any event. A motion for relief from default based on mistake, inadvertence, surprise, or excusable neglect must be brought within a reasonable time, but not more than six months after the default. (Code Civ. Proc., § 473, subd. (b).) But that is not why the trial court set aside the default. It set aside the default under Code of Civil Procedure section 473, subdivision (d), because the record showed that there had not been proper service.

"'[A] judgment that is void on the face of the record is subject to either direct or collateral attack at any time. [Citations.]' [Citation.]" (*Gassner v. Stasa* (2018) 30

22

Cal.App.5th 346, 356.)  Hence, "[a] motion to vacate a judgment void on its face is not subject to a claim of laches."  (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 831, fn. omitted.)  "'"A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll." [Citation.]  In a case in which the defendant does not answer the complaint, the judgment roll includes the proof of service. [Citation.]' [Citation.]" (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 496; see also Code Civ. Proc., § 670, subd. (a).)  A default judgment is void on its face if the underlying proof of service fails to show compliance with all statutory requirements. (*Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1441-1442.)

Here, the trial court determined — based, it seems, solely on the proof of service — that there had not been proper service.  It could properly make that determination at any time.

X

DISPOSITION

The order quashing service is reversed, solely as to Bewley; as to all other parties who had not already appeared, it is affirmed.  The order vacating the default is affirmed. On remand, the trial court must order that Bewley has 15 days after service of a written notice of entry of its order to respond to the first amended complaint, except that it may

23

shorten or extend this time for good cause.  In the interest of justice, we do not award costs on appeal to either side.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ_____
                                                                    P. J.


We concur:

SLOUGH_____
                              J.

FIELDS_____
                              J.