[L. A. No. 21768. In Bank. Aug. 22, 1951.]

Estate of LOUISE E. DABNEY, Deceased. CLIFFORD R. DABNEY et al., Appellants, v. MILTON H. PHILLEO, as Executor, etc., Respondent.

C. Paul Du Bois and John E. Sisson for Appellants.

Dolley, Knight, Woods & Hightower, Roy P. Dolley, Franklin L. Knox and Vinton T. Woods for Respondent.

SCHAUER, J.—Clifford R. Dabney and Alice M. Dabney, husband and wife, appeal from three separate orders of ratable distribution[1] entered in the above named estate over the written objections of appellants to the petitions for such distributions.

The decedent, Louise E. Dabney, died testate, respondent Philleo is the executor of her will, and appellant Clifford Dabney (except as his interest may have been divested by assignment) is one of the heirs of her estate. As hereinafter appears in more detail, however, it is not as an heir entitled to succeed to any portion of the estate but, rather, as a claimant of property rights adverse to the estate that Clifford urges his objections. The controlling question presented is whether he and his wife are, as such adverse claimants, "persons interested in the estate" within the meaning of sections[2] 1010 and 1011 of the Probate Code. We have concluded that the answer should be negative, that the orders of distribution were properly made, and that the appeal herein should be dismissed.[3]

As grounds for objecting to the three petitions for ratable distribution appellants allege that the proposed distributions were not for the best interest of the estate in that on February 1, 1950, appellants instituted an equity suit (numbered 569707) in the superior court against numerous defendants, including respondent Milton H. Philleo both individually and as per-

---

[1] Two of such orders, for $150,000 each, were entered August 22, 1950; the third order, for $300,000, was entered September 26, 1950. The funds are distributed among more than one hundred persons.

[2] Section 1010: ". . . Any person interested in the estate . . . may resist the application" for ratable distribution.

Section 1011: "If, at the hearing, it appears that . . . no injury will result to the estate or any person interested therein, the court shall make an order" of ratable distribution.

[3] Appellants have also noticed an appeal from orders striking objections to two petitions for distributions. Although such orders striking objections could be reviewed on the appeal from the distribution orders if such appeal were itself maintainable, the orders striking the objections are not in any event themselves appealable and the attempted appeal therefrom must on that account be dismissed. (Prob. Code, §§ 1240, 1242, subd. 2; see *Estate of Baldwin* (1943), 21 Cal.2d 586, 590 [134 P.2d 259].)

sonal representative of the estates of both Louise E. Dabney and her predeceased husband, Joseph B. Dabney. In such suit appellants prayed for declaratory relief, the establishment of constructive and resulting trusts, the quieting of adverse claims to their asserted title, an accounting, an injunction, and other relief, all based upon allegations of their equitable ownership in properties which are inventoried as assets of this estate. Appellants further allege that the proposed ratable distributions could not be made "without danger to the estate and its representative," and request that if distribution be ordered over appellants' objections, the court "impose an equitable charge in such order" of distribution "whereby the distributee as to these contestants [appellants] is designated a trustee."

Following the hearing upon the first petition for distribution (filed April 26, 1950) and appellants' objections thereto, the court made written findings and conclusions, in which it is stated, among other things, that Clifford had assigned to others (in fractional shares of ¼, ½ and ¼) his entire interest as an heir in this estate, that despite the filing of the equity suit by appellants the distribution sought could be made without injury to the estate or danger to the estate and the executor, and that an equitable charge would not be decreed by that court in its order of distribution. An order for ratable distribution of $150,000 was made and entered accordingly.

The other two orders for distribution recite, among other things, that hearings were had upon the respective petitions and that appellants' "objections having been ordered stricken pursuant to a motion therefor made by petitioner [executor] through his counsel; and . . . It further appearing that it will not cause any harm to said estate and is for the best interests of said estate and those interested therein," the distributions would be granted. As to the nature of the relief sought on this appeal appellants state that they "desire, in so far as any distribution presently ordered or hereafter sought, that the properties in the estate be retained in the possession of the legal representative for purposes of administration pending the adjudication on the merits [apparently of the equity suit], that respondent executor be directed to restore to said estate for such purpose any distributed properties together with any damage to the estate by reason of distributions, that the several probate Orders of Distribution be reversed and vacated. . . . Further, that appellants'

position as interested persons be established as to permit them to continue their participation in the estate proceedings and that respondents' motions to strike appellants' objections and the court's striking said objections be, in this fashion, foreclosed.''

In support of the three ratable distribution orders appealed from, respondent executor first urges that inasmuch as Clifford has, as found by the court and not disputed by him, assigned to others his entire interest as an heir in this estate, he is not a ''person interested in the estate'' who may, under the terms of section 1010 of the Probate Code, resist an application for ratable distribution or who will, under section 1011, be injured by such distribution. Although this argument may well dispose of any claim of interest which Clifford might make as an heir entitled to distribution of an heir's share of the estate, it is not in reliance upon his position as an heir that he and his wife object to the petitions for distribution, but rather upon their claims of adverse equitable ownership of certain of the properties inventoried as assets of the estate, and to the income therefrom, as sought to be established in the equity suit.

Respondent next urges, and this is the crucial issue to be determined, that appellants' suit (action 569707) does not establish them as persons ''interested in the estate'' and entitled to appear in the probate proceedings and therein directly object to ratable distributions. Both respondent and appellants confess themselves unable to find any case which ''has ever decided this point.'' However, we are convinced that related legal precedent in this state and sound public policy unite to impel a holding that appellants do not have the right, which they seek to establish, of appearing in the probate proceedings and applying directly to the probate court to delay further distributions of the estate pending final outcome of their equity suit (action 569707).

It is established law ''That the probate court has no jurisdiction to determine adverse claims to the properties of an estate in course of administration before it when asserted by a stranger to said estate. . . . [Citations.]'' (*Estate of King* (1926), 199 Cal. 113, 117 [248 P. 519]), or ''to try the question of title to property as between a representative of the estate and strangers to the estate.'' (*Guardianship of Vucinich* (1935), 3 Cal.2d 235, 243 [44 P.2d 567]; see also *Wilkerson* v. *Seib* (1942), 20 Cal.2d 556, 562 [127 P.2d 904]; *Stratton* v. *Superior Court* (1948), 87 Cal.App.2d 809, 811

[197 P.2d 821].)　██ Nor is one who is claiming adversely to an estate properties which have been included in the estate bound by the probate court's order of distribution. (See *Texas Co.* v. *Bank of America* (1935), 5 Cal.2d 35, 46 [53 P.2d 127]; *Shaw* v. *Palmer* (1924), 65 Cal.App. 441, 446-449 [224 P. 106], and cases there cited.)

The same general principle—that one over whose claims the probate court has no jurisdiction is not bound by that court's adjudications—has also found expression in cases dealing with rights to estate properties based on asserted contracts by the decedent to make a particular testamentary disposition. (See *Estate of Cropper* (1947), 83 Cal.App.2d 105, 108 [187 P.2d 780]; *Estate of Harris* (1937), 9 Cal.2d 649, 664-665 [72 P.2d 873]; *Fuller* v. *Nelle* (1936), 12 Cal. App.2d 576, 580 [55 P.2d 1248].) In *Estate of Cropper* an appeal from an order of partial distribution, taken by one who had instituted an independent suit in equity to enforce a trust upon estate properties based upon an alleged contract by decedent to leave a will in appellant's favor, was dismissed on the ground that since appellant "was not a party to the proceeding . . . for partial distribution and her rights are in no manner affected thereby, she is not aggrieved by the order and has no right to appeal therefrom." Appellant's rights were characterized by the court as being asserted "adversely to the estate." (Pp. 107, 108, of 83 Cal.App.2d.)

In *Estate of Dutard* (1905), 147 Cal. 253, 254, 256 [81 P. 519], the probate court decreed a partial distribution, over written objections by appellants sought to be maintained on the ground that in legal theory they were creditors, or entitled to the procedural rights of creditors, whose claims had been rejected by the executors and who had thereupon commenced actions thereon which were still pending. The probate court, however, found that "none of the appellants is a creditor of the estate . . . or has any claim against the same . . . but that they simply claim certain property described in the inventory adversely to the estate." At that time partial distribution was permitted, under Code of Civil Procedure, section 1661, if "it appear that the estate is but little indebted, and that the share of the party applying may be allowed to him without loss to the creditors of the estate." This court, in affirming the distribution decree, pointed out: "The claimants did not [in fact] assume to stand in the character of creditors of the decedent, seeking to enforce a debt of the decedent against his property, but purely in the attitude of

persons seeking to recover from the representatives of the estate specially described property, upon the ground that it did not belong to the estate, but was in fact their own property. . . . It is well settled that one who claims as his own, adversely to an estate, specific property held and claimed by the estate, cannot be called a creditor of the estate within the meaning of the probate law. The decisions are clear and conclusive upon the proposition that where one seeks to recover from the representatives of an estate specific property alleged to have been held in trust by the decedent at the time of his death, he is not seeking payment of a claim from the assets of the estate, is not required to present a claim as a creditor, and is not a 'creditor of the estate.' '' Although the court does not discuss the point, it may be noted that at the time of the Dutard decision (1905) persons "interested in the estate" were permitted to "resist the application" for partial or for ratable distribution. (Former Code Civ. Proc., §§ 1660, 1663.)

In *Estate of King* (1926), *supra*, 199 Cal. 113, 118-119, an appeal from a decree of distribution was taken by one "who claims to be a surviving partner of the decedent and who sought to assert her right as such in the course of the proceedings in the probate court for the administration of said estate, and by seeking to have set aside to her therein and upon the distribution thereof the entire property of said estate." In affirming the decree, this court stated, "With respect to the . . . contention of the appellant . . . that she was entitled upon her application therefor, made upon the day set for the hearing upon the petition for distribution, to have the distribution of said estate delayed until such time as she might require to have litigated and determined her adverse claim as surviving partner of said decedent, we find no semblance of merit in said contention. If said appellant had or has any right as surviving partner of said decedent to receive and administer the properties of said estate as the assets of said alleged partnership, it was clearly her duty long prior to the time for the proper distribution of said estate to have instituted an action in a court of law or equity for the determination of her said claims, and doubtless upon the institution of such action and upon a proper showing made therein she would have been accorded the right to have the distribution of the properties of the estate of her deceased partner reasonably delayed in order that her aforesaid claims might in a proper forum be determined. The appellant, however,

herein has made no showing of this sort, and it has been fully determined that the distribution of estates cannot be delayed in order to await the determination of prospective litigation by adverse claimants to the properties or any portion thereof of an estate when the same is otherwise ready for distribution. (*Estate of Ross*, 180 Cal. 643 [182 P. 755].)''

And in *Texas Co.* v. *Bank of America* (1935), *supra*, 5 Cal.2d 35, 46, in which plaintiff-respondent sued to recover from a special administrator money paid to the latter as consideration for the execution of an oil lease, it was contended that plaintiff was bound by an order settling and approving an administrator's account which included such money. The court stated, ''Since respondent was not a person interested in the estate, it could not contest the account nor was it bound by the order of settlement. The probate court in the settlement of an account has no jurisdiction to determine the rights of those claiming adversely to the estate. . . .'' (See, also, *Estate of Spreckels* (1913), 165 Cal. 597, 604 [133 P. 289].)

Despite the language of the above-cited decisions indicating that one claiming adversely to an estate is not included within the phrase ''person interested in the estate'' as used in the applicable sections of the Probate Code, appellants urge that in *Estate of Baldwin* (1943), *supra*, 21 Cal.2d 586, 590-594, and *Dabney* v. *Dabney* (1942), 54 Cal.App.2d 695, 700-702 [129 P.2d 470], a disposition towards enlargement of the included class appears. Any such tendency does not appear to extend so far as to avail appellants here. The receiver who was held to be a ''person interested'' in the *Estate of Baldwin* was claiming the share of one of the heirs, and although his claims might well be characterized as adverse to such heir, they were in no sense adverse to the estate itself. (*Cf. Estate of Crooks* (1899), 125 Cal. 459, 462 [58 P. 89].) And in *Dabney* v. *Dabney* the plaintiff who was held to be a ''person interested in the estate'' was a creditor who had recovered judgment upon a claim which had been rejected by the administrators. Based on the provisions of section 953 of the Probate Code[4] a creditor who has sued on a rejected claim has been squarely held by this court to be a ''person interested''

---

[4]Section 953: ''If there is any claim not due, or any contingent or disputed claim against the estate, the amount thereof, or such part of the same as the holder would be entitled to if the claim were due, established, or absolute, must be paid into court, and there remain, to be paid over to the party when he becomes entitled thereto; or, if he fails to establish his claim, to be paid over or distributed as the circumstances of the estate require. . . .''

and, a "party aggrieved" by an order of distribution made without provision for the payment of such claim. (*Estate of Mailhebuau* (1933), 218 Cal. 202, 205 [22 P.2d 514] ; see, also, *Estate of Wilcox* (1945), 68 Cal.App.2d 780, 787 [158 P.2d 32].) ▮ Significant, therefore, is the holding of *Estate of Dutard* (1905), *supra,* 147 Cal. 253, 256, that "one who claims as his own, adversely to an estate, specific property held and claimed by the estate, cannot be called a creditor of the estate within the meaning of the probate law. The decisions are clear and conclusive . . ." (See, also, *Porter* v. *Van Denburgh* (1940), 15 Cal.2d 173, 177 [99 P.2d 265].)

Appellants also rely upon *Estate of Ricaud* (1881), 57 Cal. 421, 422, in which the decedent's widow petitioned the probate court for an order authorizing the executors to sell "so much of the real property of the estate as the Court might judge necessary and beneficial for the purpose of paying to her a legacy of $5,000 bequeathed to her by the will of the decedent." The petition was opposed (by whom, does not appear) and following a hearing the court found, among other things, that sale of the real estate was necessary to pay the various legacies under the will, "but all of the real estate claimed to be assets was involved in litigation by an action of ejectment, which had been commenced against the decedent in his lifetime, and had been pending against the executors since his death, and was still undisposed of; therefore the Court held, the estate was not ready for distribution, . . . and a sale of the property should be delayed until the litigation concerning it was ended." Upon appeal by the widow, this court, in affirming the order, stated, "If all debts and charges against the estate . . . have been fully paid, and there is in the hands of the executor . . . an ascertained balance of assets subject to distribution, the estate is ready for distribution, and distribution cannot be delayed. . . . [P. 423] But where there is not an ascertained balance of assets . . . in the hands of the executor . . . or if the assets are merely claimed to exist, and the right to them is involved in litigation, either by an action brought by the executor . . . to recover them *for* the estate, or by an action against the executor . . . to recover them *from* the estate, then the estate is not ready for distribution. The very existence of the property as assets is uncertain, and contingent upon the determination of the suits. It may or may not belong to the estate. Under such circumstances an estate would not be ready for distribution, and the Probate Court would have power, *in the exercise of judicial discretion* [italics

added], to delay the distribution of the estate until the right to the assets be judicially determined, and the balance of assets for distribution be ascertained." (See, also, *Estate of Colton* (1912), 164 Cal. 1, 4 [127 P. 643]; *Estate of Wenks* (1915), 171 Cal. 607, 609 [154 P. 24] (adverse claimant filed no independent suit; objection in probate court to distribution rejected); *In re Burdick* (1896), 112 Cal. 387, 391 [44 P. 734], in which the court remarks, "Still, since the probate court has no jurisdiction to determine the rights of those claiming adversely to the estate, if serious questions upon such claims arise, the duty of the court might be to delay the final decree until such claims can be determined in another forum"; *Plass* v. *Plass* (1898), 121 Cal. 131, 135 [53 P. 448]; *In re Painter* (1897), 115 Cal. 635, 641 [47 P. 700].)

In the present case it is not the entire assets or (as in Ricaud) "all of the real estate" which is involved in appellants' suit 569707, but only a portion thereof. Although the record is not specific on the point, it appears that appellants' claims extend to only some 25 to 50 per cent of the assets of the estate; moreover, all creditors' claims have been paid and there is no suggestion that the distributions here ordered would endanger the ability of the estate to pay the expenses of administration. There is thus not here present the situation envisioned by Chief Justice Beatty when, in his concurring opinion in *Estate of Dutard* (1905), *supra*, 147 Cal. 253, 259, he commented that "It would not always follow that a probate court in passing upon an application for partial distribution would be warranted in disregarding [adverse] claims like those of appellants, simply because they did not constitute an indebtedness of the estate in a technical sense. The pendency of a suit to recover valuable estate inventoried as property of a decedent upon the ground that he held it as trustee, or upon any tenable ground, and the possible success of such suit would be an important consideration in any case where the loss of the property in litigation might result in a deficiency of assets to pay debts and expenses of administration." Therefore it does not appear, even assuming that appellants are entitled to have the question considered on this appeal, that the court below transgressed the limits of judicial discretion in refusing to delay the ratable distributions sought.

We hold that appellants are not "persons interested in the estate" within the meaning of sections 1010 and 1011 of the Probate Code and that they are not entitled to maintain

this appeal. (See Code Civ. Proc., § 938; Prob. Code, § 1233; *Estate of Cropper* (1947), *supra*, 83 Cal.App.2d 105, 108.)

■ In respect to the argument of appellants that we should in the interests of justice give extended inclusion to the phrase "persons interested in the estate," to the end that persons situated like appellants shall not be deprived of effectual judicial aid, we point out that from our holding it does not follow that appellants are left without adequate remedy. While they are not "persons interested in the estate" as such, they do claim an interest *in the assets* inventoried by the estate. They are asserting that interest in their suit in equity seeking, among other remedies, injunctive relief. ■ It has been said that "Courts of equity will interfere in the administration of estates where the powers of the courts of probate and their modes of procedure preclude them from doing complete justice and then only for the purpose of rendering indispensable aid to courts of probate, remitting their decrees to that court to be carried into effect." (*Estate of Rolls*.(1924), 193 Cal. 594, 599 [226 P. 608]; see, also, *Brown* v. *Superior Court* (1949), 34 Cal.2d 559, 565 [212 P.2d 878].) **[8]** It is not proper on this appeal to consider what form the equitable relief, if any be merited, could or should take. We must here presume that the equity court could afford appellants any relief to which they showed themselves entitled and that it has acted, or will act, in conformity with law and equity on the showing made. Furthermore, the record on the distribution hearings indicates that the probate court was mindful of the equity suit (including the request for injunctive relief) pending in the superior court which might, if the latter court acting lawfully and within its jurisdiction so determined, require postponement of the distributions.

The appeal in its entirety, including the attempted appeal from orders striking objections to two of the distribution petitions, is dismissed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

Appellants' petition for a rehearing was denied September 20, 1951.