[Sac. No. 6885.   In Bank.   Mar. 31, 1959.]

Estate of IRENE I. HART, Deceased. LILLIAN A. WORTH-
INGTON, as Administratrix With the Will Annexed, etc.,
Respondent, v. FRED B. HART, as Administrator, etc.,
Appellant.

Fred B. Hart, in pro. per., for Appellant.

George Olshausen as Amicus Curiae on behalf of Appellant.

Frantz & Dopkins and William E. Dopkins for Respondent.

SHENK, J.—This is an appeal from an order·approving the second account of Lillian A. Worthington, as administratrix with the will annexed of the estate of Irene I. Hart, deceased.

Augustus Loring Hart and Irene I. Hart were husband and wife. Irene died on January 25, 1952, and Augustus died eight days later on February 2, 1952. Neither decedent had parents or issue who survived them, and both died intestate as to the property involved in this proceeding.

The respondent, Lillian A. Worthington, after her appointment and qualification as administratrix of the estate of Irene, proceeded to take possession of property held in the name of and in the possession of Irene at the time of her death. She inventoried the property in the estate of Irene and administered it upon the assumption that the property belonged to that estate.

The appellant herein, Fred B. Hart, was duly appointed and qualified as administrator of the estate of Augustus. He made claim to the property held by the respondent on the ground that it had been either the separate property of Augustus, or that it had been the community property of the spouses and that it had vested in Augustus as the community survivor without administration in Irene's estate. This claim was rejected by the respondent. On July 8, 1953, the appellant commenced an independent civil action in the superior court seeking adjudication as to the rights of the respective parties to the property. The respondent defended in that action, and on May 4, 1956, a judgment was rendered decreeing that the property, except for government bonds, whose maturity value was $225, had been either the separate property of Augustus or that it had come to him as survivor of the community, and that the appellant was entitled to possession.

On November 6, 1953, following the commencement of the action seeking adjudication of title to the property, but before judgment therein, the respondent filed her first account in the estate of Irene, charging herself with all of the property as inventoried together with the income therefrom. On December 29, 1953, the court sitting in probate made its order settling the account and allowing an attorney's fee of $250, an administratrix' commission of $250, and $40.50 as items of expense in probate. The appellant did not appear or object to the account, although he had theretofore claimed his right to the property in the independent civil action. As no appeal was taken from the order allowing the account, it is now final.

The judgment in the civil action included an order that the respondent deliver the property to the appellant. The respondent obeyed that order on December 31, 1956, insofar as she was able to do so, but the value of the assets delivered fell short

of the total amount due by $1,479.11. This included $402.27 costs of court assessed against her in the civil action. The respondent on January 3, 1957, filed her second account in the estate of Irene, and sought to credit herself with the commissions, attorney's fees and costs of administration allowed in her first account, and with additional costs and expenses incurred by her in contesting the civil action. The appellant appeared in the proceedings in the estate of Irene for the first time, and asked the court to surcharge the respondent's account with the amount of the deficiency. The court found that the respondent had acted properly and in good faith in the performance of her duties as administratrix of the estate of Irene. She was ordered to liquidate the government bonds she still held as property of the estate of Irene, and to pay the proceeds to the appellant as a credit upon the amount owing from the estate of Irene to the estate of Augustus. The court further found that there were insufficient funds in her hands to fully discharge the order in the civil action and that the estate was insolvent. It refused any further relief to the appellant and approved the account as rendered. This appeal is taken from that order.

The appellant first contends that, although he had filed his civil action claiming almost all of the property inventoried in the estate of Irene before the respondent had filed her first account, he nevertheless had no right to appear in that proceeding and contest the account for the reason that he was not a person "interested in the estate" within the meaning of that phrase as used in section 927 of the Probate Code. It is provided therein in part as follows: "Any person interested in the estate may appear and file written exceptions to the account, and contest the same. . . ."

It is well established in this state that the superior court sitting in the exercise of its probate jurisdiction is without power to determine adverse claims to the properties of an estate in the course of administration when asserted by a "stranger to the estate" as in the present case. The proper manner of litigating such a question of title is in the superior court in the exercise of its general jurisdiction, as such action was commenced and concluded in the present case. (See *Schlyen* v. *Schlyen*, 43 Cal.2d 361 [273 P.2d 897].) Furthermore, this rule has been applied not only to actual contests of title to the assets of an estate, but also to the raising of objections during probate. Thus, in *Estate of Dabney*, 37 Cal. 2d 672 [234 P.2d 962], adverse claimants to assets inventoried

in the estate had commenced an independent action in equity to recover the same. They also sought to object to the distribution of those assets, claiming that they were "persons interested in the estate" within the meaning of sections 1010 and 1011 of the Probate Code. Those sections are similar in effect to section 927, but relate to the making of objections to distributions rather than accounts in estate proceedings. It was held "that related legal precedent in this state and sound public policy unite to impel a holding that the [claimants] do not have the right, which they seek to establish, of appearing in the probate proceedings and applying directly to the [court sitting in the exercise of its probate jurisdiction] to delay further distributions of the estate pending final outcome of their equity suit. . . ."

It was further held in the Dabney case that not only does a court sitting in probate lack jurisdiction to determine an adverse claim, but that neither "is one who is claiming adversely to an estate properties which have been included in the estate bound by the court's order of distribution. (See *Texas Co.* v. *Bank of America* (1935), 5 Cal.2d 35, 46 [53 P.2d 127] ; *Shaw* v. *Palmer* (1924), 65 Cal.App. 441, 446-449 [224 P. 106], and cases there cited.)" ▉ The Texas Company case referred to in the Dabney case did not involve an objection to an order of distribution as in the Dabney case, but an objection to an accounting as in the present case. The court stated in that case: "Since respondent was not a person interested in the estate, it could not contest the account nor was it bound by the order of settlement. The probate court in the settlement of an account has no jurisdiction to determine the rights of those claiming adversely to the estate. . . ." (See also *Estate of Wilson*, 114 Cal.App.2d 468 [250 P.2d 266].)

▉ From the foregoing it is apparent that a superior court in the exercise of its probate jurisdiction cannot adjudicate adverse claims as to the title of property claimed by an estate and a stranger thereto; that it necessarily follows that one claiming adversely to the estate is not "a person interested" in the estate and is not competent to object to an accounting therein, and that such a person is not bound by an order of the court settling such an account. Accordingly, in the present case the appellant was not bound by the order settling the first account and allowing attorney's fees, administratrix' commissions and certain costs.

▉ The respondent seeks, however, to limit such holdings to situations where the assets of the estate are sufficient to off-

set the demands of those claiming adversely in the event they are successful in their independent actions. It is true that in the Dabney case the court noted that the claims extended "to only some 25 to 50 per cent of the assets of the estate" and "there is no suggestion that the distributions here ordered would endanger the ability of the estate to pay the expenses of administration." A similar contention, based on the sufficiency of the estate to meet its expenses of administration, was made in *Estate of Wilson, supra,* 114 Cal.App.2d 468, and the court stated at page 471: "If, as the *Estate of Dabney* and the many authorities cited therein unite in declaring, one asserting an adverse interest to properties inventoried as assets of an estate is not a person interested therein as those words are used in various sections of the Probate Code, the extent of the adverse claim would appear to be a matter of no consequence. The lack of necessary interest arises from the nature of the claim and not the extent thereof." Upon an examination of the Dabney case it is concluded, as was held in the Wilson case, that a different result would not have followed had the question as to the sufficiency of the estate been present in the Dabney case.

It does not necessarily follow from the foregoing that the appellant is entitled to the relief which he seeks. ▮ There remains the question whether at this stage of the proceeding he is such a "person interested in the estate" who might appear and object to the second accounting, and take this appeal from the order settling the second account. The distinction between his right to appear and object to the first account, and his right to appear and object to the second account must be based on the fact that in the interim he had obtained a judgment declaring that he was the owner of practically the entire estate. It is to be assumed that at least to the extent that the appellant is a judgment creditor for his costs of suit he would have the right to appeal and object as would any other creditor whose claim originally arose against the estate during administration. (See *Estate of McMillin,* 46 Cal.2d 121 [292 P.2d 881, 56 A.L.R.2d 1175].) And there appears to be no reason why he should not now be a "person interested" to the full extent of the judgment decreeing his adverse title to be superior. ▮ The policy that the court cannot try title in the exercise of its probate jurisdiction, and which precludes a mere claimant as a "person interested" can no longer be invoked after the question of title has been determined in an independent action. After final judgment

in that action the court in the probate proceedings should determine only the fact of that judgment and need not determine the merits of the adverse claim.

In the second account the appellant sought to surcharge the respondent's accounts with all items of expense, fees and commissions which had been allowed in the first account. The court in the second account purported to re-examine those allowances and to reapprove them, and it might be deemed that those items, if rightfully allowed, were binding on the appellant as proper in the second account. However, the allowance of $250 as administratrix' fees and a like amount for attorney's fees in representing the administratrix in the ordinary course of administration cannot be deemed to have been properly made. Such fees and commissions are governed by statute and are based upon the "amount of the estate accounted for." (Prob. Code, § 901.) The amount of the estate finally accounted for in the estate of Irene was, for all practical purposes, nothing, and it was error to allow commissions and fees based on assets not a part of the estate.

The appellant also claims that it was error for the court to allow the respondent her ordinary costs of administration and of defending in the civil action, including costs assessed against her by the court as an incident to the judgment. As stated, the trial court made findings that in all matters in defending against the civil action and in administering the estate the respondent had acted in good faith throughout, and had been guilty of no fraudulent conduct. There is nothing in the record which indicates the impropriety of those findings. An administratrix is bound to defend against a claim that part of the property found in the name or in the possession of the decedent did not in fact belong to the estate. It is asserted, however, that she is not entitled to utilize funds which do not belong to the estate and which she holds in trust. This court dealt with the question of the duty of an administrator to preserve funds claimed to be held in trust in the case of *Elizalde* v. *Elizalde,* 137 Cal. 634, where it said at page 638 [66 P. 369, 70 P. 861] : "It may often happen that an executor or other personal representative takes possession of funds which may be proved to be trust funds without any knowledge that such is the fact. Not knowing the fact, it would be his duty to resist, on behalf of the heirs, legatees, and creditors of the estate, any attempt to deprive it of a part of its assets. . . ." The administrator's duty to conserve the estate does not require that

he advance his own funds for that purpose. The assets of the estate are normally available to that end.  ▮  In defending in good faith against claims that the assets are trust funds held for the benefit of the claimants, he is entitled to treat the alleged trust fund as an asset, until judicially determined otherwise. (See *Eggert* v. *Pacific States Sav. & Loan Co.*, 53 Cal.App.2d 554 [127 P.2d 999].) The prohibition against using such funds may mean that there could be no active defense where the best interests of the heirs, legatees and creditors of the estate, would require such a course. (*Estate of Sidebotham*, 138 Cal.App.2d 412 [291 P.2d 965].)

▮  In view of the foregoing and of the findings in the present case as to the respondent's good faith, the trial court properly allowed her expenses in defending in the civil action, including reasonable attorney fees which may have been incurred in that defense. The court's allowance of the ordinary costs of administration was also proper for similar reasons. While some items of costs may not be directly attributable to the imposition of the defense against the adverse claim they nevertheless were all necessary costs of the measures undertaken, at least in part, to protect and preserve the estate, and the administratrix was required by law to undertake such measures. Unlike commissions and attorney fees the allowance for such costs is not based on the amount of the estate accounted for, but whether they are "necessary expenses in the care, management and settlement of the estate." (Prob. Code, § 900.) The court did not err in allowing those in the present case.

▮  It is well to note here that the appellant, although not a "person interested" in the estate until he obtained his independent judgment, was not required to stand by while the assets involved were dissipated in the administration of the estate of Irene. As pointed out in the *Estate of Dabney* at page 682: " 'Courts of equity will interfere in the administration of estates where the powers of the courts of probate and their modes of procedure preclude them from doing complete justice. . . .' [Citations.] It is not proper on this appeal to consider what form the equitable relief, if any be merited, could or should take. We must here presume that the equity court could afford appellants any relief to which they showed themselves entitled. . . ." While the appellant in the present case relied on the *Estate of Dabney* as grounds for not appearing at the first accounting, he failed to assert the

remedy suggested in that case to minimize depletion of the assets.

The order is reversed insofar as it makes an allowance for statutory attorney fees and commissions to the respondent as administratrix, and is affirmed insofar as it allows ordinary costs of administration and costs of defending in the civil action. Each party shall bear its own costs on this appeal.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., McComb, J., and White, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.