73 Cal.App.3d 141 (1977)
140 Cal. Rptr. 593
Estate of DOYLE WILLIAMS, Deceased.
GLADYS BETHEL, as Administratrix, etc., Petitioner and Appellant,
v.
GEORGIA H. KIRKSEY, Claimant and Respondent.
Docket No. 50417.
Court of Appeals of California, Second District, Division Four.
September 6, 1977.
*143 COUNSEL
Philip Barnett for Petitioner and Appellant.
Joseph M. Wapner for Claimant and Respondent.
OPINION
JEFFERSON (Bernard), J.
Petitioner Gladys Bethel (hereinafter Gladys), administratrix of the estate of Doyle Williams, deceased, petitioned the probate court for instructions and sought declaratory relief pursuant to Probate Code section 851.5,[1] with respect to certain real *144 property in the possession of, and claimed by, Georgia H. Kirksey (hereinafter Georgia).
After an adversary hearing, findings of fact and conclusions of law were signed by the trial judge declaring that claimant Georgia had acquired ownership of the subject property by adverse possession. Petitioner Gladys has appealed from the judgment entered in favor of Georgia.
From the petition and the claimant's declaration (the contents of which were stipulated by the parties to be regarded as testimony on direct examination) and the evidentiary record, we have gleaned the following information:
Doyle Williams died intestate in Los Angeles County in 1934; apparently the only asset in his estate was two houses on a lot located at 223 North Mountain View Avenue in Los Angeles, the real property involved in the instant litigation. His wife, Tennessee, survived him and resided after his death on the property with her daughter, Elnora Bond.
Elnora Bond was declared an incompetent in 1947, and her mother was named guardian. Elnora's income consisted of approximately $122 per month in the form of a pension from the Veteran's Administration.
In 1956, Tennessee Williams died, leaving a will which devised this real property to Elnora. The will, naming petitioner Gladys, a neighbor and friend, executrix of the estate, to serve without bond, was admitted to probate. It was then discovered that there had been no probate proceedings on the death of Doyle Williams, and that title to the real property was still in the name of Doyle Williams. Petitioner Gladys was thereafter appointed administratrix of his estate. The only asset of both estates was the real property which is the subject of this litigation. No further action was taken by anyone after 1956 to terminate estate administration in either case.
After her mother's death in 1956, Elnora continued to live on the property, which she regarded as her own and on which she paid the real property taxes. The house on the back of the lot was used as a rental unit, which netted a rental of approximately $40 per month. Elnora's finances were handled by the successor guardian to Tennessee, a Mrs. Hardy. In *145 1962, petitioner Gladys was appointed successor guardian, but, at trial, appeared to have no knowledge of Elnora's financial affairs; although the record is not clear, someone took the initiative to dispense Elnora's monthly check to a grocery store where food was purchased for her, and, presumably, to pay other necessary expenses.
In 1956, after Tennessee's death, an interested person at the World Church introduced claimant Georgia to Elnora, who requested that Georgia live with her and care for her in return for room and board, as there was no money to pay Georgia a salary. From that time forward, Georgia was Elnora's housekeeper and lived on the premises, except for one brief vacation period.
In February 1961 Elnora expressed to Georgia the former's desire to leave the real property to Georgia because she felt that Georgia had been very good to her. Elnora and Georgia visited a lawyer at Elnora's request; he drafted both a will and a grant deed in favor of Georgia to accomplish the objective she had in mind. Elnora believed she owned the property and told Georgia that she did; Georgia had no reason to doubt her opinion, nor did she know that Elnora had been adjudicated an incompetent many years before. The grant deed, dated February 21, 1961 (and received in evidence below), was recorded the same day.
Elnora died in 1964. Her will was offered for probate. Georgia testified that at some point in time she was told by the attorney who represents Gladys in the instant case that the deeds weren't right. Petitioner Gladys filed a contest to the probate of Elnora's will, but the contest was dismissed in 1970 for lack of prosecution.
After Elnora's death, Georgia continued to live on the property and Gladys continued to live next door. Beginning in 1965, and continuing for each year thereafter, Georgia paid all the real estate taxes assessed against the property.[2] Georgia also paid $250 toward Elnora's funeral expenses, and $392.44 to discharge a lien filed against the real property by the County of Los Angeles Department of Charities for services rendered to Elnora.
At some time after 1964, there was a fire which demolished the front house on the property; Georgia, who had placed fire insurance on the property, was paid by the insurance company, and used those funds to fix up the back house where she is presently living. At the time of trial, *146 Georgia Kirksey was 86 years of age; Gladys Bethel was still living next door at the time of trial. There were no known heirs to the estate of either Doyle Williams or Tennessee Williams, following Elnora's death.
The trial judge's findings of fact and conclusions of law set forth that the claimant Georgia Kirksey had acquired title to the property by adverse possession; that her occupation of the real property was "hostile" to the record owner, had continued without interruption for more than five years, and that she had paid all the taxes levied against the property. Consequently, judgment was entered declaring Georgia Kirksey to be the sole owner of the property and quieting her title as against the estate of Doyle Williams, Gladys Bethel and any others claiming through or under the estate.[3]
Gladys argues on this appeal that the evidence was insufficient to establish the creation of Georgia's title by adverse possession. A recent expression of the standard of applicable appellate review is contained in Horn v. General Motors Corp. (1976) 17 Cal.3d 359, 367 [131 Cal. Rptr. 78, 551 P.2d 398], wherein the California Supreme Court said: "We view the facts in the light most favorable to [the prevailing party], giving [that party] the benefit of every reasonable inference and resolving all conflicts in her favor in accordance with the standard of review long adhered to by this court."
We turn to the elements which are essential to establish a title to real property by adverse possession.
(1) The law is well settled that a claimant, founding his title on adverse possession, must establish five elements: "(1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner. [Citations.] (2) Possession must be hostile to the owner's title. [Citations.] (3) The holder must claim the property as his own, either under color of title, or claim of right. [Citations.] (4) Possession must be continuous and uninterrupted for five years. [Citations.] (5) The possessor must pay all of the taxes levied and assessed upon the property during the period. [Citations.]" (West v. Evans (1946) 29 Cal.2d 414, 417 [175 P.2d 219].) These same five elements are set forth in similar fashion in Kraemer v. Kraemer (1959) 167 Cal. App.2d 291, 306 [334 P.2d 675]; "To establish title by adverse possession there must be an actual, open, notorious occupancy of the subject property, which is *147 hostile and adverse to the owner's title, under such circumstances as to give reasonable notice thereof, either actual or constructive, to the true owner, by an occupant claiming the property exclusively as his own, under a claim of right or color of title, which is continuous and uninterrupted for five years, and is accompanied by the occupant's payment of all taxes levied and assessed against the property during that period of time."
(2) The element of "hostility" "means, not that the parties must have a dispute as to the title during the period of possession, but that the claimant's possession must be adverse to the record owner, `unaccompanied by any recognition, express or inferable from the circumstances of the right in the latter.'" (Sorensen v. Costa (1948) 32 Cal.2d 453, 459 [196 P.2d 900].)
(3) The element of "color of title," as a part of proving adverse possession, has been described as "founded on a written instrument, judgment or decree, purporting to convey the land, but for some reason defective. The possessor has what appears to be title, and, if he is in good faith, is protected. This is so even though the instrument is void on its face. [Citations.] [¶] (4a) Color of title is received in evidence for the purpose of showing that the title is adverse and it therefore dispenses with other proof of hostile or adverse claim." (3 Witkin, Summary of Cal. Law (8th ed. 1973), Real Property, § 55, pp. 1817-1818.) (Italics in original.)
(5) The good faith of the occupant, in relying on a defective instrument, is a crucial element to establishing adverse possession based upon color of title. (Newman v. Cornelius (1970) 3 Cal. App.3d 279 [83 Cal. Rptr. 435]; Park v. Powers (1935) 2 Cal.2d 590 [42 P.2d 75]; Madden v. Alpha Hardware & Supply Co. (1954) 128 Cal. App.2d 72 [274 P.2d 705].) (4b) While the instrument need not be recorded, recordation does establish the intention to claim the property adversely to the owner. (Johns v. Scobie (1939) 12 Cal.2d 618 [86 P.2d 820, 121 A.L.R. 1404].)
In the instant case, Gladys asserts that Georgia's occupancy of the property was permissive rather than hostile, allowed by Gladys as executrix for reasons of convenience, and that this state of affairs was known to Georgia. The trier of fact, however, was not required to believe Gladys' version. Instead, the trial court chose to believe the testimony of Georgia that she knew nothing about Gladys as an executrix and received the property from Elnora and that Georgia's continued *148 occupancy after Elnora's death contained the requisite element of adverse holding. Georgia testified convincingly that she thought Elnora had title and was capable of conveying that title to her, although neither assumption was correct. (6) The evidence is substantial to support the finding of adverse possession based upon color of title.
A more difficult contention of Gladys relates to her assertion that the successor to an heir only takes title subject to the claims of administration. There is early case law declaring this principle. In re Grider (1889) 81 Cal. 571 [22 P. 908], held that so long as the administration of an estate remains unclosed, the successor in interest of one of the distributees who enters into possession of land under a decree of partial distribution cannot acquire title by limitation, or adverse possession as against those who are legally entitled to claim an interest in the land as tenants in common, though he claims title to the whole of the land, and pays all taxes thereon. And in Blair v. Hazzard (1910) 158 Cal. 721, 725 [112 P. 298], the California Supreme Court posed this question: "[C]an a devisee of an estate or a grantee of a devisee entering into possession of realty by virtue of title actually or colorably derived from the estate and asserting title from no other independent source acquire, under these circumstances, a title against the estate by adverse possession so as to relieve the property from the statutory requirement that it shall be subject to the demands of administration. This question must be answered in the negative: ..." Blair analyzed the heir-successor-in-interest situation as comparable to that of landlord and tenant, pointing out that the element of hostility is missing because of the permissive nature of the occupancy. Blair was relied upon in Marsh v. Edelstein (1970) 9 Cal. App.3d 132 [88 Cal. Rptr. 26], in rejecting a claim of adverse possession against an estate.
Other decisions, however, have recognized that adverse possession of property may occur while the property is subject to estate administration. In Satariano v. Galletto (1944) 66 Cal. App.2d 813 [153 P.2d 201], the administratrix of estate property claimed it as her own, and acquired title against the estate by adverse possession, after obtaining a probate order and quiet title judgment vesting title in her. In Lobro v. Watson (1974) 42 Cal. App.3d 180 [116 Cal. Rptr. 533], the right to property based upon adverse possession was recognized despite the fact that the property had originally, many years past, been subject to estate administration. The Lobro court pointed out that when there is an intestate succession, there is an automatic vesting of title in the intestate heirs subject to administration, but that adverse possession may be successfully asserted *149 where the administration fails to proceed in timely fashion: "An additional factor which must also be taken into consideration in this case is that Carrie was the administratrix and sole intestate heir of Albert's estate. She was therefore under an affirmative duty to marshal the assets of the estate. [Citations.] As administratrix, she was required to exercise the degree of care and prudence that an ordinary person would employ in handling his or her own affairs. [Citations.]" (Lobro, supra, 42 Cal. App.3d 180, 188-189.)
Gladys contends herein that since Georgia got her "color of title" from Elnora, the heir of the estate, she cannot establish a source independent of the estate and, therefore, Gladys, as administratrix and executrix of the two respective Williams estates, should prevail.
Gladys' contention is tenable if all the language in Blair is to be taken literally. Thus, Blair makes the statement that "[t]he administrator's or executor's possession never has been and never will be construed as possession in hostility to the heir or devisee, ..." (Blair, supra, 158 Cal. 721, 725.) But in Satariano, a deceased's widow became administratrix, and then, acting as widow rather than as administratrix, secured a probate order setting aside to her the entire estate, which consisted of a residential parcel of property. Later, she filed a quiet title action against her minor children. The argument was made that the widow remained administratrix of the estate of her deceased husband until her death and, therefore, could not hold adversely to the estate.
But the Satariano court held that she obtained a good title by adverse possession even though the probate order and the quiet title decree be deemed void. The court reasoned "that her act of seeking and obtaining the order setting aside the estate to her, her act of seeking and obtaining the decree quieting her title and her subsequent acts in dealing with the property as her own gave unquestioned notice of the hostility of her claims as against the estate of her deceased husband and all persons claiming any interest therein. We believe these acts were sufficient to permit her to acquire title by adverse possession for even a trustee of an express trust, who openly repudiates the trust, may hold adversely to the beneficiary and start the running of the statute of limitations." (Satariano, supra, 66 Cal. App.2d 813, 816.) (Italics added.)
Blair also states that "from the very nature of the case title by adverse possession cannot be acquired against the administrator or executor.... There is nothing, therefore, and can be nothing, to put the administrator *150 upon notice that the devisee is claiming in hostility to him. The devisee may, as in this case, honestly believe that he is holding against all the world, including the estate, but in truth he is holding against all the world except the estate, since under the law his whole title is subordinate to the estate's rights." (Blair, supra, 158 Cal. 721, 725-726.)
But in Johns, the California Supreme Court used different language from that the court used in Blair, although the factual setting in Johns was different from that in Blair. In Johns, the claimant, one of decedent's heirs, began an adverse occupation after death of the common ancestor and completed his adverse possession before letters of administration were issued. Nevertheless, the Johns court stated: "The mere possibility of some future proceedings in administration could not completely bar the acquisition of an adverse title. It would seem clear that if adverse possession can be gained against the other heirs, who have the legal title, it certainly can be gained against such claims as the executor or administrator may have for purposes of administration." (Johns, supra, 12 Cal.2d 618, 627-628.)
(7) In light of the statement from Johns, we do not believe that Blair must be considered as binding authority to preclude a claimant, who is not an heir, but whose color-of-title instrument comes from an heir, from gaining a good title by adverse possession, free of the claims of an administrator or executor whose only interest in the estate is to secure administrator's fees and attorney's fees.
In the case at bench, Gladys, as administratrix, represents no heirs as there are no known heirs of the estates in question. Gladys, living next door, had to know that Georgia was maintaining the real property and paying the taxes during the many years after Elnora's death. Gladys had to be aware that Georgia had placed fire insurance on the front house and used the proceeds, after the destruction by fire of the front house, to repair and renovate the back house as the place of her residence. There are no creditor's claims that must be satisfied. Gladys made no effort to collect rent from Georgia or otherwise indicate that she was an executrix of the estates of Doyle Williams and Tennessee Williams and that Georgia's title to the property could be gained only through completion of administration of those two estates.
We think the Blair case must be interpreted to not preclude a claimant, who relies on a color-of-title instrument from an heir, from gaining title by an adverse possession against an administrator or executor, if the facts *151 demonstrate, on the part of the administrator or executor, inattention to duty and neglient conduct in the administration of the estate. Such inattention to duty and negligent conduct create an estoppel against the administrator's or executor's reliance on the rule that an heir or grantee of an heir whose color of title comes from the estate cannot acquire title by adverse possession against the estate.
The instant case is not unlike that of Lobro. Although in Lobro the central issue involved the question of whether one can adversely possess property to which the legal owner is unaware that he has any right, the Lobro court used, as one basis of its holding against the legal owner, that the legal owner was an administratrix and heir who failed to exercise due diligence in the administration of the estate and whose conduct, therefore, amounted to negligent administration of the estate.
We conclude that the claimant herein, Georgia Kirksey, sustained her burden of proof in establishing title, by adverse possession, under applicable rules of law, of the real property in issue.
The order and judgment from which the appeal has been taken is affirmed.
Kingsley, Acting P.J., and Dunn, J., concurred.
NOTES
[1] That section provides, in pertinent part, for a hearing in the probate court to determine ownership of property "[i]f a person dies in possession of, or holding title to, real or personal property which ... is claimed to belong to another, or dies having a claim to real or personal property, title to or possession of which is held by another...." upon a petition brought by the executor, administrator, or any claimant.
[2] Proof of these payments was received in evidence in the trial court.
[3] The judgment itself contains a clerical error in need of correction; it refers to the estate of William Doyle, when undoubtedly Doyle Williams was the intended reference.