[Civ. No. 25851. Fourth Dist., Div. Two. Mar. 26, 1982.]

Estate of STANLEY SAYLES, Deceased.
HARRY MENCONI, as Executor, etc., Objector and Respondent, v.
LEE MENCONI, Claimant and Appellant.

**COUNSEL**

David Eden for Claimant and Appellant.

Jean Ann Hirschi and Hirschi, Healey & Healey for Objector and Respondent.

**OPINION**

**THE COURT.**[*]—Claimant Lee Menconi appeals from the trial court's order denying her creditor's claim and petition filed under Probate Code section 851.5.[1] The trial court determined it had no jurisdiction to authorize payment. We affirm.

### THE FACTS

Stanley Sayles executed a promissory note for $30,000 secured by a deed of trust, in favor of his niece Lee Menconi in 1974.[2] In exchange,

---

[*]Before Kaufman, Acting P. J., McDaniel, J., and Gardner, J.[†]

[1]All statutory references are to the Probate Code unless otherwise indicated.

[2]This trust deed was held in joint tenancy by husband and wife. The property identified in the deed was a commercial parcel in Palm Desert, California. However, it is

[†]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

Lee agreed to look after Stanley's wife until her death. The note provided for installment payments at the rate of $150 per month. Both the note and trust deed were executed by Stanley Sayles individually, and as attorney-in-fact for his then living wife, Marion. Marion was then in a convalescent home. Although the parties hotly dispute the point, the trial court found she was unable to manage her personal and business affairs at this time. The deed of trust was not then recorded.

In 1978, Marion died. Six months later, Stanley died, leaving a will and codicil. In April 1979, Harry Menconi (Lee's husband) was appointed executor of Stanley's estate. On April 30, a notice to creditors was published, and the time for filing claims expired on August 30.

Sometime in April 1979, Harry came into possession of the promissory note and deed of trust, and informed the attorney for the estate of their existence. The attorney advised Harry to tell his wife, Lee, to seek independent counsel regarding her rights under the note and deed of trust.[3] Harry so instructed Lee. Thereafter, Lee obtained an attorney who filed a special notice in the probate proceeding (§ 1202), but did not otherwise file a creditor's claim within the four-month statutory period. (§ 700 et seq.)[4]

Thereafter, in May 1980, the commercial property referred to in the unrecorded trust deed naming Lee as a beneficiary was sold to a third party. Although no actual finding exists on this point, it is basically undisputed that this property was sold to a bona fide purchaser for value. Lee received notice of the petition confirming this sale. Apparently, because all of the parties were under the mistaken impression that Lee's

---

undisputed that from 1978 until early 1981 all parties mistakenly believed the trust deed referred to the Sayles' residence, devised in Stanley's will to a third party not involved in this appeal.

[3]Though Harry and Lee remained married, they had entered into a de facto separation by 1979.

[4]Section 700, subdivision (a) provides: "Publication of the Notice of Death and of Petition to Administer Estate, published pursuant to Section 333, shall also constitute notice to the creditors of the decedent, requiring all persons having claims against the decedent to file them in the office of the clerk of the court from which the letters issued, or present them to the executor or administrator within four months of the first issuance of letters, including letters of special administration with powers of a general administrator or the granting of additional powers, duties, and obligations of a general administrator under Section 465 to a previously appointed special administrator."

Section 707, subdivision (a) provides in relevant part: "Except as provided in subdivision (b) or Section 707.5 or Section 720, all claims arising upon contract, whether they are due, not due, or contingent, . . . must be filed or presented within the time limited in the notice or as extended by the provisions of Section 709 of this code. . . ."

trust deed involved Sayles' family residence at this time (see fn. 2, *ante*), this notice did not send up a red flag to anyone.

In December 1980 Lee belatedly recorded her deed of trust on the commercial property. At approximately the same time, she also filed a creditor's claim in the amount of $11,700 for all payments to date on the promissory note since its inception. The executor then petitioned for instructions concerning this claim.

The claimant filed an answer and "Petition by Third Person Against Property Owned Or Possessed by Decedent's Estate Under Probate Code § 851.5." After a hearing on the combined petitions, the trial court denied the claimant's petition, ruling, inter alia: (1) the holder of a deed of trust against real property owned by the decedent may not pursue the claim by a petition under section 851.5; (2) notice of the deed by the executor and filing of a special notice did not constitute a claim under section 700 et seq.; and (3) a deed of trust executed by a spouse adjudged to be incompetent is invalid unless executed pursuant to Probate Code section 2435.1 et seq. Thus, the court concluded it lacked jurisdiction to order any payment.

DISCUSSION

A. *Probate Code Section 851.5.*

Section 851.5 provides, in relevant part, "If a person dies in possession of, or holding title to, real or personal property which, or some interest in which, is claimed to belong to another . . . any claimant may file . . . a verified petition setting forth the facts upon which any claim is predicated. . . ." Section 851.5 contains no time limitation for bringing a petition. (See *Estate of Williams* (1977) 73 Cal.App.3d 141 [140 Cal.Rptr. 593].)

■ The claimant here argues that as the beneficiary of a deed of trust used to secure a promissory note, she possessed an "interest" in real property, bringing her within the scope of section 851.5. We consider this contention in light of the history behind the enactment and amendment of this statute.

Section 851.5 was enacted in 1965 (Stats. 1965, ch. 1901, § 1, p. 4409) and amended in 1972 (Stats. 1972, ch. 641, § 1, p. 1192) and

1979 (Stats. 1979, ch. 731, § 23, p. 2562). The 1972 amendment was designed to afford individuals claiming an interest in real or personal property of the decedent an opportunity to file a petition in probate court concerning that property, rather than being relegated solely to a separate civil action. The change was designed to abrogate the long-standing rule that the probate court lacked jurisdiction to determine adverse claims to the properties of an estate or to try the question of title to property as between a representative of the estate and strangers to the estate. (*Estate of Dabney* (1951) 37 Cal.2d 672, 676 [234 P.2d 962].) Indeed, as one commentator analyzed the 1972 amendment: "The principal impact of the above amendment is to allow the probate court to determine controversies concerning the title to property where the party asserting an interest is claiming adversely to the estate and not in privity with it. (See *Estate of Hart*, 51 Cal.2d 819, 832, 337 P.2d 73 (1959); *Estate of Dabney*, 37 Cal.2d 672, 676, 234 P.2d 962 (1951).)" (4 Pacific L.J. 243.)

Since its enactment, cases decided under section 851.5 have required an "interest" in real or personal property far more substantial than merely being the beneficiary of a trust deed securing a promissory note. In *Richer* v. *Superior Court* (1976) 63 Cal.App.3d 748 [134 Cal.Rptr. 52], the petitioner under section 851.5 claimed to be the true owner of real property in the decedent's estate, and had brought a separate quiet title action concerning that property. In *Estate of Williams, supra,* 73 Cal.App.3d 141, the petitioner under section 851.5 claimed title to the property in question by adverse possession. In *Heiser* v. *Superior Court* (1979) 88 Cal.App.3d 276 [151 Cal.Rptr. 745], the executor of a pre-deceased husband filed a section 851.5 petition in the probate proceedings of his wife's estate, claiming one-half of the wife's estate was community property belonging to the husband. In *Estate of Collins* (1978) 84 Cal.App.3d 928 [149 Cal.Rptr. 65], the intended beneficiary of a Totten Trust petitioned under section 851.5 to determine title to funds on deposit in the decedent's savings account. In *Estate of Aiello* (1980) 106 Cal.App.3d 672 [165 Cal.Rptr. 207], beneficiaries under the decedent's will petitioned under section 851.5 to determine the ownership of money held in a savings account which the decedent had changed to joint tenancy just after executing her will.

The common denominator in all of these authorities, consistent with the history behind the enactment of that statute, is that the claimant in each instance sought a declaration of title, ownership, or possession of the property at stake. By contrast, the claimant here would not obtain a

declaration of title, ownership, or possession of the property involved here. The creditor's "interest" in the property is limited to the security it represents for payment of the promissory note/debt. Assuming the creditor were a senior lienholder of the property and a foreclosure sale were held to satisfy the debt, the most the creditor would receive would be the money owed—$11,700—not the property itself. This sort of "interest" in the property is too remote and far afield from the meaning given to that word in other cases decided under section 851.5. We conclude that the trial court properly denied the petition under section 851.5.[5] Moreover, we strongly suspect that the claimant's entire argument concerning an "interest" in the security (property) is a moot point, since the property was sold to a bona fide purchaser before the claimant's petition was ever filed, and is no longer an asset of the estate.

### B. *Notice of Claim*

■ Secondly, the claimant maintains that the executor's actual notice of the promissory note and deed within the four-month filing period constituted an adequate claim or demand under Probate Code section 700. The executor concedes such notice, but argues that mere notice does not constitute a claim.

The Supreme Court's decision in *Nathanson v. Superior Court* (1974) 12 Cal.3d 355 [115 Cal.Rptr. 783, 525 P.2d 687], is controlling on this point. In *Nathanson*, during the statutory filing period, decedent's divorced wife petitioned seeking a family allowance, and alleged creditor's claims "anticipated to be filed." No formal, verified claim was made within the statutory period. About two weeks later, a formal claim was made. The trial court denied the wife's petition, filed on the theory that the prior notice of anticipated claims satisfied section 700. Wife then obtained a writ of mandate from the Court of Appeal. That court granted an alternative writ and the Supreme Court, on the executrix' petition, granted a hearing.

---

[5]Of course, the holder of a mortgage or lien may sue directly to enforce the lien without regard to presenting a claim (§ 707), provided the lienholder expressly waives all recourse against all other property of the estate. (§ 716; see generally, 1 Cal. Decedents Estate Administration (Cont.Ed.Bar) §§ 13.14, 13.23.) Even if we might assume the claimant was a valid lienholder when the petition was filed in this instance, the petition here was expressly filed under section 851.5, and did not waive recourse against the general assets of the estate; to the contrary it was filed against the estate's general assets.

*Nathanson* acknowledged that the Probate Code does not provide a definition of "claim" as that term is used in section 700 et seq., noting, however, ". . . the word connotes a demand (see Black's Law Dict. (4th ed. 1951) p. 313) for the payment of a debt or of damages (see § 707) made against the representative." (12 Cal.3d 355, 366.) "[I]t has long been settled in this state that a claim need only 'state such facts as will apprise the executor or administrator of the amount of the demand.' (*Tabata* v. *Murane* (1944) 24 Cal.2d 221, 231 [148 P.2d 605].) But the claim must be filed or presented as a demand against the estate in some from sufficient to apprise the representative of the underlying debt or injury. (See *Thompson* v. *Koeller* (1920) 183 Cal. 476, 483 [191 P. 927]; *Doolittle* v. *McConnell* (1918) 178 Cal. 697, 711-712 [174 P. 305]." (*Id.*) Most importantly, for our purposes at least, *Nathanson* went on to hold: "[W]e are satisfied that mere notice to the estate is not enough. It is too late in the day to equate mere notice and compliance with statutory filing requirements thereby imposing on representatives of estates the responsibility of guessing when they must take action in respect to the debts of decedents." (12 Cal.3d 355, 366-367.)

Turning to the case at bench, while it is undisputed that the executor had notice of the promissory note and trust deed, mere notice is not enough to constitute a valid claim under *Nathanson*. Notice of the debt instrument does not suffice to automatically inform the executor of the amount due, since part of the debt may have been paid, or the entire debt may have been extinguished by subsequent events unknown to the executor. Nor does the filing of a special notice constitute a sufficient claim. A special notice during the four-month period was also filed in *Nathanson*. Under principles of stare decisis the trial court was obligated to follow *Nathanson*. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) So are we.

Our determination of the foregoing issues resolves this matter and renders it unnecessary for us to discuss any other points raised.

The order denying the petition is affirmed.

Appellant's petition for a hearing by the Supreme Court was denied May 20, 1982.